## VOLNEY STAMPS *v.* GILMAN & CO.

1. LANDLORD AND TENANT—ATTACHMENT FOR RENT NOT DUE—REMOVAL OF GOODS BY TENANT.—It is not every contemplated removal by a tenant of his effects from the leased premises, that will warrant an attachment under art. 3, p. 340 of the Rev. Code. It must be such a removal as would defeat a distress for rent.

2. DISTRESS AT COMMON LAW.—Distress for rent at common law was a dormant right of the landlord to seize the tenant's effects as a means of compelling the payment of

rent. The right was utterly impotent, and in no wise encumbered the title of the tenant till the right was made active by an actual seizure.

3. DISTRESS UNDER MISSISSIPPI STATUTES.—The right of distress by attachment in favor of a landlord exists under the statute, not because of any lien at common law or by statute, but because of rent in arrear, or because of a contemplated removal.

4. LEGAL RELATIONS OF LANDLORD AND TENANT.—But subject to the landlord's right or privilege of attachment or distress, to be made active only by its exercise, the tenant is as completely the owner of his effects as any other debtor; and excepting this right or privilege, the landlord has no advantage over other creditors.

5. SAVING LANDLORD'S RIGHT AGAINST JUDGMENT CREDITOR—ENG. STAT. 8 ANNE C. 17.—The provision of the Rev. Code, art. 288, p. 531, forbidding sales under execution in certain cases, unless a year's rent be paid or tendered, implies no lien in favor of the landlord. The British prototype of this statute (8 Anne, ch. 17) has received repeated interpretation by the English courts Co. Litt., 47, C; 1 Strange, 97; 1 Atk., 104; 2 Wilson, 141; 5 Maule & Selw. 38.

6. GENERAL PRINCIPLE.—A debtor is under equal duty and moral obligation to pay all his debts; and he has a right at common law to select one rather than another. 15 Wend., 396; 7 Bing., 243; 3 J. J. Marsh, 482; 3 Watts, 247.

7. GOODS SOLD AND REMAINING ON DEMISED PREMISES—RULE AND EXCEPTIONS.—The rule, that if the tenant sells his goods and they remain on the demised premises, they shall be liable to distress, is modified whenever the reason of it does not apply An open public sale under judicial process—a mortgage or deed of trust duly registered—goods sold to a succeeding tenant (1 Atk., 104)—a crop sold under *fieri facias*, and left in the field for convenience or from necessity (Willis, 132) have been held to be exceptions to the general rule.

9. MORTGAGE—POSSESSION—In this state the practice is almost universal for a mortgagor to retain possession, and his right to do so is well understood. 4 S. & M., 163.

10. NO LIEN.—There is no lien, at common law or by statute, in favor of a landlord on a tenant's effects. What is popularly so considered is nothing more or greater than a right in certain events to sue out attachments for rent, an actual seizure under which, creates a specific lien.

11. TENANT'S RIGHTS OVER HIS EFFECTS.—The dominion of a tenant over his effects is co-extensive with the dominion of other debtors over their effects, as regards both use and sale; provided, such sale be for value and in good faith.

12. TENANT AND HIS MORTGAGEE.—A mortgagee is a purchaser *sub modo*; and after condition broken, he can maintain trover, detinue or replevin, for possession of the mortgaged effects.

13. TENANT'S MORTGAGEE, AND LANDLORD—PRIORITY OF RIGHT AS BETWEEN—CASE AT BAR.—A mortgage for value and in good faith, with forfeiture or condition broken prior to levy of attachment for rent, shall prevail as against such attachment.

Error to the circuit court of Claiborne county. SMILEY, J.

The plaintiff in error assigned the following errors:

1st. There is error in the judgment of the circuit court sustaining the demurrer of the defendants to the first avowry filed by the plaintiff.

2d. There was error in the order of the circuit court striking out the avowry and the special pleas in the case, and

ordering the case to be tried on the general issue of not guilty alone.

3d. There is error in the charges to the jury, given by the court at the request of the plaintiffs in the court below, and in the refusal of the court to grant those requested by the defendant in said court.

4th. There is error in the decision of the court overruling the motion of Stamps, the defendant in the court below, for a new trial.

*J. H. & J. F. Maury,* for plaintiff in error.

The first question presented is the decision of the circuit court, sustaining the demurrer of the plaintiff below to the first avowry of the defendant.

Stamps sued out an attachment for rent against the tenant, Lilly, and had it levied on the ten bales of cotton which were claimed and replevied by Gilman & Co. The avowry of Stamps, the plaintiff in error, rests upon the principle that the property of a tenant is liable to be distrained for rent, and will so continue until it is carried off the demised premises, and sold in good faith, and for a valuable consideration. Revised Code of 1857, p. 340, art. 5.

2d. The next error assigned is the order of the court to strike out the amended avowry, and pleas, and replications, and directing the case to be tried on the plea of not guilty. The amended avowry and pleas, and replications were filed in pursuance of the practice established by the common law in actions of replevin for property distrained for rent. We do not deny that the mode of trial ordered by the court may be preferable to that ordained by the common law. But we insist that the court is forbid by the constitution, to exercise powers that properly belong to the legislature.

3d. That a landlord is entitled to a lien for rent on the property of his tenant on the demised premises, or else that he has an absolute and vested property in his share of the profits, is a principle that has not been questioned until very recently. The language of commentators, of the decision of

courts, and of the legislation of Mississippi can be sensibly interpreted only by conceding to the landlord his lien for rent, or a right amounting to an indefeasible and vested property in his share of the profits of his land. A lien is defined to be the claim of one person attached to the property of another, so as to prevent the owner of the property from disposing of it until the claim is satisfied. Jacob's Law Dictionary. Such, at common law, was the claim of landlord, a lien which extended the right of distress to all property found on the demised premises. 3 Black. Com., p. 8. This lien is now restricted to the property of the tenant of the demised premises.

Though a judgment in general is a lien on all the property of the defendant, yet as to property of the defendant on the demised premises it is postponed to the lien of the landlord. By art. 288, on page 531 of the Revised Code, the sheriff is forbid to take property on leased premises, by execution or other process, unless rent due the landlord is first paid. Even if the lien for rent has no sanction at common law, it is amply established by art. 288, p. 531 of the Revised Code. *Communis error facit jus,* is a law maxim of high authority. Noy's Maxims, 27; Broom's Maxims, 9; 4th Inst., 24. We think the legislative opinion of the common law, and of art. 288, p. 51, of the Revised Code correct. Down v. Garretson, 24 Iowa. The acts of 1867, give a lien to the vendor of supplies, but in the 8th section provides "that nothing in the act shall affect any of the rights or remedies now allowed by law, of the landlord for rents." The "right and remedies" referred to are none other than the lien for rent, and the remedy of distress. Yet it is gravely contended that claims which are postponed to the vendor of supplies, are of equal force with the claim for rent, which was at common law a lien, and is by statute entitled to satisfaction prior to the preferred claim for supplies. The pamphlet acts of 1865, page 137, provides in section 6 that the "act shall not be so construed as to defeat the rightful lien of the landlord for rent, as against his tenant, so far as the crop raised on the

demised lands may be or exist." This is what Blackstone
calls a declaratory and remedial law. 1 Black. Com., 86;
Taylor on Landlord and Tenant, § § 598–601, pp. 436 and
437; also, § 533, p. 388. Rent is a lien upon the tenant's
goods so long as they remain on the demised premises, and
at common law, the right was gone the moment they were
removed; for the landlord had parted with his lien. Taylor's
Landlord and Tenant, 5th ed., p. 432, sec. 577. A landlord
who leases, to a cropper for the year, to receive part of the
grain for rent, has a lien upon the growing crop; and it
cannot be removed by the tenant, or those acting under
him, until the rent is provided for. Ib., p. 395, sec. 533, citing
11 Ohio R., 364; Toller's Executors, p. 280; 1 Salk. 317;
1 Saun. R., note *c.*

The remedy of distress for rent is not extinguished by a
bond for the rent, nor even by a judgment. 3 McCord R.,
584; 13 Johns. R., 240; 2 N. Y. Digest, p. 714, No. 29. That
a warrant of distress, issued by a landlord against his tenant
will overreach a mortgage by the tenant to a third party, of
a date prior to that of the warrant, is abundantly established.
See 3 Kent's Com., 482; 1 Parsons on Contracts, 518, 5th ed.
Taylor, L. & T., sec. 592 note; Reynolds v. Shuler, in 5 Cow-
an's R., 323; Bigalow v. Judson, 19 Wend. R., 229.

The statute law of Mississippi, provides that before a sale
under a mortgage, the mortgagor shall be deemed the
" owner of the legal title of the property," except only as
against the mortgagee and his assigns. Revised Code, art.
12, p. 308. Therefore, as to Stamps, the landlord, the prop-
erty of Lilly, his tenant, continued to be the property of
Lilly, notwithstanding the mortgage he had given to Gilman
& Co., the plaintiffs in replevin, and notwithstanding the
refusal of the court so to charge the jury. Looking outside
of our statute to ascertain the effect of a mortgage on the
respective ownership and rights of mortgagor and mortgagee,
and to learn how the property remains with the mortgagor,
we refer to the cases cited in 3 New York Digest, p. 507,
numbered 83, 84–87–90, 91, 92–94, 95, 96.

Even by the Mississippi statute, as found in the Revised Code, the landlord is permitted to adjudge, and, by the aid of an officer, to execute his rights, though in a just responsibility to the tenant, for distraining without any, or beyond the measure of his rights. Revised Code, 339; 2 Black. Com. 17. Rent is appurtenant to the land; it constitutes a part of the estate, and belongs to the landlord, as the common of estovers, fire bote, fence bote, etc., appertain to the leasehold, and belong to the tenant. 2 Black. Com. 35; Taylor's Landlord and Tenant, § 447, p. 325, 4th ed; Smith's Landlord and Tenant, top p. 256–359; 3 Kent's Com., 464; Toller's L. and T., § 390, p. 383; Smith's L. and T., marginal p. 127; 3 Bibb. R., 432; Taylor, sec., 705; Bacon's Abr. Rent D.; 2 Black. Com., 41. If Stamps and Lilly, the landlord and tenant, may be regarded as joint owners, or partners of the crop, neither could, on his private account, sell or encumber the interest of the other; for such a transaction would not bind the firm, or the effects belonging to it. Collier on Partnership, 170–281; ib. p. 65.

5th. From the authorities already cited it is plainly evident that this action of replevin cannot be maintained by Gilman & Co., against Stamps, because they claim the cotton only by a mortgage from Lilly, in whom, as to all persons except the mortgagee, the legal title remains even after forfeiture, and until foreclosure and sale. 1st. A suit at common law for personal property must be brought in the name of the legal owner, and can be maintained in the name of no other person. 1 Chitty, 3–49. 2d. The defendants here, who were plaintiffs in the court below, as to Stamps, or any other person except Lilly, the mortgagor, are not the legal owners of the cotton sued for. Revised Code, p. 308, art. 12. That they cannot, therefore, maintain this suit against Stamps, is demonstrated with the certainty of a scholastic syllogism. The second proposition is established by the Code, and maintained by the authority of 4 Kent, 160; 2 Howard R., 697; 3 Howard R., 369 and 370; 32 Miss. R., 225; 1 Atkyns' R., 605.

We think the circuit court erred in this:

1st. In sustaining the demurrer to the first avowry, which set up a sufficient bar. to the action, and required to be answered by a plea.

2d. In ordering the second avowry, pleas and replicacations to be stricken out, and the case to be tried on the plea of not guilty.

3d. In charging the jury, at the instance of plaintiffs, that a landlord, as such, has no lien on the property and crops of his tenant on the demised premises for the rent thereof.

4th. In granting the second charge asked for by plaintiffs, on the hypothesis of a sale of the cotton, when, in fact, no sale had been proven, or attempted to be proven, but only a mortgage.

5th. By refusing to grant the first, second, third, fourth and fifth charges to the jury, asked for by the defendant, which are in the body of the record, and to which the attention of the court is respectfully referred, the principles and authorities applicable to them being herein discussed.

6th. In refusing to charge the jury, at request of defendant, that " one who buys property of another, subject to rights or liens of a third party, and with knowledge of such rights or liens of third parties, buys the property subject to such rights of such third party." In support of this principle which we had esteemed indisputable, we refer to 1 S. & M. Miss. Rep., 96–206. 2 Sugden, bottom p. 269.

*Stephen Thrasher*, for the defendant in error.

The verdict and judgment of the court below are correct. The replevin was taken out under art. 12, Code, p. 342.

Even if there was no proof that the property was delivered over to Gilman & Co., in pursuance of the terms of the mortgage, before the distress warrant of Stamps was levied, yet upon the forfeiture of the mortgage they became the absolute owners. 4 Kent, p. 141; Thornhill v. Gilmer, 4 S. & M., 153; 8 S. & M., 433. The mortgagee is entitled to immediate possession in the absence of an agreement to the

contrary.   26 Maine, 499.   And the only question remaining is whether or not the sale of the property defeated the landlord's right to distrain it for rent.   A mortgage of the property by the tenant is such a sale as will defeat the landlord's right to distrain.   2 Dana's Ky. Rep., 204; 25 Wend., 396; 5 Maule & Selwyn, 38.

Stamps distrained for his rent before it became due, and took out his process under art. 3 of the Code, p. 340, which provides for a step of this kind.   The decisions in 5 Maule & Selwyn, 38; 25 Wend., 396; 4 Randolf, 332, are to the effect that the statutes which prohibit the tenant from removing his goods from the demised premises before the rent is paid, extend to the goods of the tenant only.   Now, art. 3, p. 340, Rev. Code, says:   " When any landlord or lessor shall have just cause to suspect, and shall verily believe that his tenant will remove his effects from the demised premises."   The question is, will not the same reasoning apply to this statute of ours, and confine the landlord's remedy to the goods of the tenant only, and not what he may have sold in good faith.

At common law the landlord had no right to distrain before the rent became due.   Taylor on Landl. and Ten., 421 ; 1 Hardin Ky., 297; 1 Saunders, 287; 3 Kent, 587; Woodfall on Landl. and Ten., 314.

This court has already decided the principles involved in this case in Mary P. Marye v. John T. Dyche et al.   [See 42 Miss. Report.]   It is very evident that a landlord has no greater security or lien for his rent than anybody else; that he has no lien until his attachment for rent is levied; also, if before that time the tenant mortgages or sells his property in good faith, such mortgage or sale is valid.

Under our statute the property of the tenant is liable for the rent, and not the property of a third person, and the simple question at issue between the parties in this case is, was the property in controversy the property of Eli Lilly, or the property of J. M. Gilman & Co. ?   If the property of Lilly, the tenant, it was liable for the rent; if the property of Gilman & Co., it was not.   This fact was all the issue

involved in the case, and could be put in issue under the plea of not guilty or *non cepit*. So this error assigned amounts to nothing, and the court below did not err in extending the demurrer of the defendant back, and striking out all the defective pleadings.

SIMRALL, J.:

On the 21st day of April, 1866, Eli Lilly executed to J. M. Gilman & Co., a mortgage to secure a promissory note for $3,821 42, payable the 1st October thereafter. The consideration of this indebtedness was supplies furnished by J. M. Gilman & Co. to Lilly, to conduct a plantation and make a a crop thereon. The plantation had been leased from Volney Stamps. On the 22d day of October, A. D. 1866, Stamps sued out a distress warrant, or attachment for rent, against Lilly, on allegation that Lilly was indebted to him $2,000 for rent, to fall due 1st January, 1867, and that Lilly will remove his effects from the demised premises before the rent becomes due, so that no distress can be made. Under this attachment, on the same day, 22d October, the sheriff seized and took into possession sundry bales of cotton found under the gin-house on the demised premises. J. M. Gilman & Co. made the affidavit and bond required by the statute, as claimants and owners of the cotton, and replevied the same. Several rulings occurred in the circuit court on the pleadings; finally all the avowries and special pleas were stricken out by the court and the cause was submitted to the jury on the general issue. As full latitude was extended to both parties on this issue, to present the merits of the claim and defence, we have not thought it necessary to pass on these points.

1st. The main question discussed by counsel, and one of grave importance is, whether the mortgagee or the landlord is entitled to the cotton. The distress for rent is of very ancient origin. Ch. Baron Gilbert supposed that it was derived from the civil law. It prevailed among the Gothic nations of Europe immediately after the disruption of the Roman Empire. It was one of the few remedial measures permitted to the aggrieved party, to be executed by himself,

without judicial aid.  It allowed the taking of the chattels of the wrong-doer into possession of the aggrieved party as a pledge for the performance of a duty, or satisfaction for a wrong.  It was most commonly used by landlords to compel their tenants to render the service due, or pay the rent.  It did not authorize the landlord to sell.  This right was first conferred by statute, 2 William & Mary, Ch. 5.  The ancient common law distress has been modified, enlarged, and regulated by statute, both in England and this country, so that it is very much a statutory remedy.  An important modification made by the American statutes, including our own, is, that only the goods of the tenant (or of some other person found on the demised premises, bound or liable for rent), can be distrained.  The goods of a stranger on the premises are not· so liable as they were at the common law.  Another modification is, that the distress at common law could only be made on the premises.  The only exception to this was if the landlord or his bailiff came to distrain, and got sight of the cattle on the land and the tenant drove them off before they could be seized, the landlord or bailiff could make pursuit.

If the tenant, in anticipation of a distress, and for the very purpose of defeating it, drove off his cattle before the landlord or bailiff got a view of them on the premises, pursuit and seizure in another place was unlawful.  For remedy of this mischief, the British statute allowed goods, which had been clandestinely and fraudulently removed by the tenant, to be followed and seized, unless before seizure, the goods had been *bona fide* sold for value to a person not privy to such fraudulent act.  The fifth article of our statute contains the same provision, allowing the seizure within thirty days after removal and before sale (omitting the clause of a clandestine and fraudulent removal), and so does the fourth article, where the removal has been effected before the rent has become due.

So, under the third article, if the landlord suspects that his tenant will remove his goods and effects before the rent

falls due, *so that no distress can be made*, attachment may issue. It is under this section the landlord, Stamps, has proceeded. It is not every removal of effects under this article that will warrant the attachment. There must be such removal contemplated and intended as will defeat a distress. So much must be intended to be removed, as that enough will not be left on the premises to afford ample and complete indemnity for the rent.

All the questions embraced in this controversy may be summed up in this proposition: Was the cotton, at the time it was attached, the goods and effects of tenant? They were, it is argued by counsel for Stamps, because they were upon the demised premises, and the landlord had a lien on them by virtue of his lease and the relation the tenant bore to him, which was paramount to the mortgage.

On the other hand the existence of a lien is denied, and it is claimed that the mortgage passed the ownership to Gilman & Co., or at least the right of property and of possession became complete on condition broken by non-payment of the note; and further, there had been an actual transfer of the cotton to them before the levy of the attachment. What dominion and power of disposition has the tenant over his chattels on the demised lands? His right of use and power of disposition is co-extensive with that of any other proprietor, unless it has been limited and circumscribed by law. If his effects are subject to a lien it must be implied by the law or created by his own act. If the lien *is implied*, how far does it reach, and to what does it extend? It does not attach to the goods and adhere to them in nature of a mortgage lien, or like the lien reserved or implied by the law, on all property sold under decrees of the probate court. If so, it would still adhere to the effects so long as the goods existed and could be followed. The distress at common law was a dormant right or privilege to take the thing into possession as a pledge or means of enforcing the tenant to pay his rent. If this right was not made active by *actual* seizure, it was utterly impotent and in nowise encumbered the title of the

tenant. So, too, under our statute. The landlord has the *right* or privilege in any of the contingencies therein named to attach the goods of the tenant, not by virtue of any lien at common law, or by the statute, but because his rent is due and in arrear, or because the tenant is about to remove his effects or has already done so. Subject to this right or privilege of the landlord the tenant is as completely the owner of his effects as any other debtor. And these are the only advantages which the landlord has as creditor over any other creditor at large. In Craddock v. Riddlesburger, 2 Dana R., 212, in describing the right of the landlord, Ch. Justice, said: " He may have a *priority*, to a qualified extent over other creditors, and he may have, too (if he will), the official responsibility of the sheriff. This is his utmost right, and such is the character of his lien. He has no lien to any other extent, or of any other kind."

The special priority here referred to, is the right to one year's rent, before the goods shall be sold under an execution in favor of a judgment creditor. The landlord's right (however it may be described), is not a *jus in rem ;* it does not amount to a title legal or equitable. He can maintain neither trespass nor trover in respect to the effects. The provision of the Code forbidding the sale under execution, unless a year's rent be paid, etc., has been relied upon in support of the idea that the landlord has a lien. This article is essentially copied from its British prototype, 8th Anne, and comes to us with the interpretation put upon it by the English courts. These are some of them :

The landlord must notify the sheriff of his lien prior to a sale under judicial process, and demand his rent, or otherwise it is not the duty of the sheriff to retain the rent. Warring v. Dulany, 1 Strange, 97.

After demand and notice, if the sheriff remove or sell the goods, he is liable only for their value, less his expenses. Dodd v. Saxly, 2 Strange, 1024.

A sale under the execution rests the title in the purchaser unencumbered by the landlord's claim. *Ex parte* Grove, 1

Atk., 104; Coke Litt., 476; Hanchell v. Kimpson, 2 Wilson, 141.

This provision of the statute was not designed to furnish a new remedy as against the tenant, but against officers acting execution on judgment against the tenant. A sale under execution at common law passed the title. Nor was there any remedy in favor of the landlord against the judgment creditor, or the sheriff who made the levy and sale. Nor, since this statute, can the landlord follow the goods into the hands of the purchaser. His only recourse is to obtain the value of the goods, to the amount of the year's rent, by application to the court to which the execution is returnable, or by an action against the sheriff.

Now all this doctrine negatives the idea that there is a lien on the goods, for the benefit of the landlord. If the sheriff, by his sale, can pass the title (and he can transfer none other or greater, than the tenant had), it would seem to follow that the tenant himself, might make a conventional sale, if actuated by good faith, and for valuable consideration.

In Thornton v. Adams, 5 Maule & Selwyn, 38, a sale of the goods by the tenant, in payment of an antecedent debt, was sustained, although the creditor knew that rent was due, and apprehended that the landlord would distrain. The judgment reposes on the solid foundation that the debtor is under an equal duty and moral obligation to pay all of his debts. If he pays one rather than another, he discharges a duty, but only makes the election who shall be the recipient of it, and he has, at common law, a right to make the preference.

Frisby v Thayer, 25 Wend., 396, was the case of a mortgagee who had got possession of the goods six days before the levy of the distress for rent. The mortgage, which contained a power of sale, was dated July, 1837; the levy was made 31st January, 1838.

Commenting on the facts of the case, Nelson, Ch. J., said in effect, that the case needed not the benefit of the exception in the statute "protecting property removed from the premises and sold by the tenant before seizure made, in good faith, and for a valuable consideration," etc. But it rested on the

general right of the tenant to dispose of his property, which, said the learned judge, " is no more embarrassed on account of rent in arrear, than by any other description of outstanding debt." If the purchaser was not privy to a " fraudulent removal," under the British statute, he was protected. The tenant can remove them, unless guilty of a fraud in fact. *A fortiori*, may the purchaser or mortgagee do so. 7 Bing., 243. The tenant may make a valid sale of his goods, as against the landlord. Mitchell v. Franklin, 3 J. J. Marshall, 482.

It has been resolved, under the English statute, that if the tenant *fairly* and *openly* removed his goods, the right of the landlord to distrain, was gone. And if clandestinely removed, and thirty days elapse, or if fairly sold to a stranger, they could not be distrained. Clifford v. Beems, 3 Watts, 247.

It is said in the books, that if the tenant sell his goods, and they remain on the demised premises, they are still subject to distress. It is apprehended that this general statement has given rise to the idea that they must be removed before sale, or immediately after.

Possession of personal property is *prima facie* evidence of title. Generally, possession by the owner, and in some cases perhaps, connected with the possession of the person from whom he received by delivery, is the only evidence of ownership. Out of this, to guard against covin fraud, sprung the doctrine that, as respects creditors and innocent purchasers, the right shall be construed to be with the possession, and it shall be deemed fraudulent in the seller to retain possession after he has made a sale. Therefore, if the tenant sell his goods, but still keep possession of them, the landlord may invoke this principle against the purchaser who claims against his distress. But there are modifications of the rule, where the reason can have no application.

A mortgage or deed of trust, registered in the proper office, is outside of the rule. In *ex parte* Grove, 1 Atk., 104, the goods were sold to the succeeding tenant and continued on the land, yet they were held not to be liable to distress. In

Eaton v. Southey, Willis, 131, a growing crop was sold under a *fieri facias*, which was left in the field for convenience and husbandry. Its continuance in the field was for necessity, and for a reasonable time after, would still be necessary, and there was therefore no right to distrain.

In this state the practice is almost universal for the mortgagee to retain possession. His right so to do, is well understood. The mortgage is registered, and thereby becomes notice to creditors and subsequent purchasers. In Snyder v. Hitt, 2 Dana, 482, it was said by the court that possession by the mortgagee is not fraudulent *per se*, " and that the judicial doctrine of constructive fraud had been carried far enough—perhaps too far." This case is in point in support of all the views we have advanced. Two questions are stated by the court :

1st. Can a landlord distrain for rent due by his tenant, goods in the tenant's possession, but which are under a *bona fide* mortgage to another ?

2d. Can the mortgagee of a chattel maintain trover for a conversion of it by a stranger whilst it was in the possession of the mortgagor ?

As to the first proposition, it was held that the mortgagee, both before and after forfeiture, was deemed a purchaser; and that the tenant had the power of disposition, and that his purchaser may hold in spite of any claim arising out of the relation of landlord and tenant.

As to the second, it was plain that a mortgagee, like any other person who had a general or special title, might bring trover against a wrong-doer.

It was said in the case cited from 25 Wend. R., " that a mortgagee is a purchaser, *sub modo*." Indeed, he holds toward the mortgagor the double relation of creditor and purchaser. In his former character he can foreclose, and is subject to redemption. In the latter he takes the title, which he may count upon and enforce in all the appropriate forms of action, as any other owner. It is none the less a legal title, because it is loaded and burdened with equities and trusts.

If there may be doubt as to his right to maintain trover, detinue, or replevin before forfeiture, there can be none of his right to do so after forfeiture. In Thornhill v. Gilmer, 4 S. & M., 163, the contest was between the judgment creditor and mortgagee of personal property. The latter held the property against the levy and seizure of the former, on the ground " that the legal effect and operation of a mortgage after the condition is forfeited, is to invest the mortgagee with an absolute interest in the property mortgaged.

The mortgage of Gilman & Co. was recorded two days after its date. In addition to this, the testimony tends to show that Stamps had actual notice of it—was cognizant of the dealings between Lilly and Gilman & Co. The testimony leaves no doubt that the transaction was *bona fide*, and that the advances made by Gilman & Co. were consumed in the production of the crop, and contributed largely to making it.

We are conducted by the foregoing reasoning and authorities to these conclusions :

1st. That by virtue of the relation of landlord and tenant, no lien on the tenant's effects on the demised premises, results, or is implied, at common law, or by the statute.

2d. That what is popularly supposed to be the landlord's lien, is nothing more or greater than the right, on the conditions and contingencies enumerated in the statute, to sue out an attachment.

3d. That the seizure of the effects under the attachment, makes, or creates a " specific lien."

4th. That the dominion of the tenant over his effects on the demised premises, is co-extensive with that of any other debtor, both as to use and sale, provided the sale be for valuable consideration, and in good faith.

5th. That a mortgagee is a purchaser, *sub modo*, and after condition broken, can maintain trover, detinue, or replevin, in respect to the mortgaged effects.

6th. That the mortgage to Gilman & Co. having been executed in good faith for value, and the forfeiture having occurred before the levy of the attachment for rent, the mort-

gagee has a superior and better right to the cotton than the landlord under his attachment.

Urged by the copious arguments of counsel, we have examined the questions presented, somewhat *de novo*, and are satisfied with the judgment pronounced in Mayre v. Dyche et al., at the April term, 1869.   See 42 Miss. Report.

The instructions granted and refused, in the main, accord with the views and principles herein expressed.

Wherefore we affirm the judgment of the circuit court.