METZLER ET AL. V. JAMES.

1. CHATTELS IN POSSESSION OF MORTGAGEE AFTER DEFAULT NOT LIABLE TO EXECUTION.— A mortgagee in possession of personal property after forfeiture holds the legal title thereto, and the interest of the mortgagor therein is an equitable right of redemption only. In such case an execution against the property of the mortgagor issued upon a judgment recovered by a third person cannot be legally levied upon the mortgaged property; nor can the property be legally seized or sold thereunder.

2. SAME — MORTGAGOR MAY OBJECT TO VALIDITY OF SALE.— A mortgagee in possession of chattel property cannot, by consenting to a sale of the mortgagor's equity of redemption therein on execution, waive the mortgagor's right to object to the validity of such sale.

3. SAME — STATUTORY REMEDY — GARNISHMENT.— Neither the provisions of the statutes nor of the code of civil procedure of this state (Gen. St. 1883, § 1835; Code, §§ 101, 106) authorize an officer to take personal property from the possession of a mortgagee upon a writ of execution or attachment, and to subject it to sale on such writ. The statutory remedy provided for subjecting equitable interests to sale on execution is the process of garnishment, wherein the judgment creditor is required to pay or tender the amount due the mortgagee, whereupon the latter is required to deliver the chattels or effects to the officer holding the execution, who is then authorized to sell them as other goods taken on execution. Gen. St. 1883, pp. 516–522, and particularly § 1567.

4. AS AGAINST MORTGAGOR, STATUTORY PROCEEDINGS CANNOT BE WAIVED WITHOUT HIS CONSENT.— Garnishment proceedings are for the benefit of the plaintiff in execution, and none of the steps prescribed by the statute for reaching and subjecting to sale on execution mortgaged property can be waived as against the mortgagor without his consent.

5. OBJECTIONS NOT MADE ON TRIAL NOT AVAILABLE ON APPEAL.— An objection that a mortgage is illegal because by its terms it permitted the goods to be retained by the mortgagor, with the right of disposition by him, cannot avail on appeal when the objection was not made on the trial below, and is inconsistent with the defense there set up, admitting the validity of the mortgage but alleging a different contract of defeasance than the one set up in the complaint.

6. WHEN ONE PARTNER MAY SUE FOR AND RECOVER FIRM PROPERTY MORTGAGED.— Where one of two partners who have mortgaged firm property refuses to join the other in an action for an account and redemption, and is made defendant, no dissolution of the partnership, nor severance of interests, nor distribution of the re-

covery being sought by the action, the plaintiff's recovery is not limited to one-half the value of the goods mortgaged. The recovery in such case goes to the partnership fund as assets for the payment of partnership debts, if there be any.

*Appeal from Superior Court of Denver.*

ACTION by Philip W. James against Hannah Metzler for an account and redemption under a mortgage of merchandise. Edward H. Cadwell, one of the mortgagors, refused to join as plaintiff, and was made defendant. Decree for plaintiff, and Mrs. Metzler appeals. The facts are stated in the opinion.

Messrs. DECKER & YONLEY, L. S. DIXON and Messrs. WELLS, McNEIL & TAYLOR, for appellant.

Messrs. LONG & HINSDALE, for appellee.

DE FRANCE, C. This is, in its essential features, an action for an accounting and redemption under a chattel mortgage. The appellee, Philip W. James, and one Edward H. Cadwell, as equal copartners under the firm name of Cadwell & James, were engaged in and carrying on the drug business at two different establishments in the city of Denver; and on the 9th day of January, 1884, borrowed of the appellant, Hannah Metzler, the sum of $2,700, which they engaged to pay back in one year, in twelve equal monthly instalments, with interest at three per cent. per month, with the privilege of paying the entire loan at any time within the year, on condition, however, that if they exercised such privilege they should pay a certain bonus.

To secure the payment of said loan, they at the time thereof executed and delivered to the appellant two bills of sale, absolute in form, of the contents of said establishments, including the furniture and fixtures as well as the stock of goods in each store; one of the bills of sale covering the contents of one, and the other of the

other, store. An agreement in the nature of a defeasance, to be signed by the parties, was partially agreed upon and partially prepared, but not then completed or signed. The same was afterwards completed and signed by appellant, but was neither signed nor accepted by Cadwell & James; they claiming that it was not in accordance with their understanding of the matter.

Some time between the 4th and 10th of February, 1884, the appellant took possession of these stores, and has since continued in such possession, and conducted the business, selling and disposing of the goods, and replenishing the stocks with new supplies from time to time, as she deemed advisable or expedient; having taken in her husband, Joseph Metzler, as a partner, shortly after the execution sale herein mentioned. The appellant claims that it was a part of the agreement that she might thus sell the goods and replenish the stocks, and the appellee denies the same. At all events, the appellant put up new signs, and conducted the business to all intents and appearances the same as though Cadwell & James no longer had any interest therein, and they were excluded from all control thereof. Cadwell was employed part of the time by appellant as a clerk, but allowed no control. On the 17th of July, 1884, after this suit was begun, the appellant and her husband sold the contents of one of the stores *en masse* to Hall & Miller, without notice to the mortgagors, for the sum of $2,800, except a few of the goods which were transferred to the other store. This action was begun on the 11th of April, 1884. Cadwell refused to join as plaintiff therein, and was made a party defendant. He interposed no defense, and his default was duly entered.

The case was referred to a referee, who made a report therein, which was set aside, and it was thereupon re-referred to the same referee, and to his second report exceptions were taken by both parties, some of which were sustained and the others overruled. The court

thereupon made its own findings, and rendered judgment in favor of the appellee. The appellee alleged that the mortgaged property was worth $15,000, while appellant claimed that its value did not exceed $3,500. The value found by the court was $11,813.57.

The testimony is quite voluminous. Much contention arose over the fact as to whether the written defeasance signed by appellant, some time after the bills of sale were given, expressed the agreement of the parties, and as to what such agreement was in fact. Whether the appellant was to have immediate possession or not until default was made in payment was disputed, and whether the mortgagors had agreed that new supplies might be added to the stock by the mortgagee was also controverted, as likewise the question of value. No evidence was introduced showing the amount derived by the mortgagee from sales of the mortgaged goods, and no list or invoice of the mortgaged property remaining on hand was furnished or produced in evidence, and no evidence given showing what mortgaged goods still remained on hand unsold, except that relating to the furniture and fixtures in one of the stores.

The court found that the written defeasance given in evidence did not express the understanding or agreement of the parties; that the mortgagors had not agreed that the stock should be replenished; and that the mortgagee had exceeded her power in so doing. The court also found that the mortgagee had failed and omitted to produce such testimony as by law she was required to do; that she had rendered no account in the premises as required; and that she had so dealt with and managed the mortgaged property as to render herself properly chargeable with the reasonable value thereof; and, after allowing many credits to the mortgagee besides the mortgage debt and interest, the court rendered a judgment in favor of appellee for $4,585.41, and also that, in case a delivery of the furniture and fixtures still on hand could not be

had, the appellant should pay the further sum of $1,884.66 to appellee, and that the appellant should pay the costs of suit.

Four propositions are presented and argued by counsel for appellant, either one of which, it is claimed, is fatal to the judgment. These propositions are as follows: *First*, that, by the plaintiff's own showing, the contract upon which he relies is fraudulent in law, and wholly vicious; *second*, that by the execution sale the plaintiff's equity of redemption in the chattels was lost; *third*, that if, upon the facts proven and admitted, the plaintiff was entitled to any relief, the judgment is variant from and inconsistent with the case made by the complaint, and must be reversed for that reason; *fourth*, that the amount allowed to the plaintiff as damages is excessive.

The first proposition is based upon the allegation in the complaint that, by the terms of the agreement between the mortgagors and mortgagee, the mortgagors were "to retain possession of said goods and chattels, and were allowed to sell and dispose of the same in the regular order of trade." It is said that this averment in the complaint, "like all other averments and admissions of a party of record in a pending suit, is conclusive upon the appellee in this controversy." This objection was not made in the court below, and cannot be raised here for the first time. Besides, it is inconsistent with the defense made. The answer admits that the contract entered into between the parties was a mortgage, and sets up a defeasance different in its terms from that alleged in the complaint. No one will dispute that a chattel mortgage is a lawful contract. Having thus admitted that the transaction was a lawful one, the appellant cannot now be permitted to assert the contrary.

The maintenance of the second proposition depends upon whether an equity of redemption in personalty is subject to levy and sale under an execution. It is not subject thereto at common law. It was set up as a de-

fense in the answer that the mortgaged property was, on the 29th day of April, 1884, sold under an execution against Cadwell & James, the mortgagors. The court below held, in effect, that this alleged sale was irregular and void. The mortgagee had the legal title to and was in the possession of the property. The mortgagors had but an equity of redemption therein. Unless the sale under execution of such equity of redemption was authorized by statute the same cannot be upheld. The statutory provisions referred to by counsel are not in point. The law which controls the matter is to be found in section 1567, General Statutes of 1883, which reads as follows: "When it shall appear that such goods, chattels, choses in action or effects in the hands of a garnishee are mortgaged or pledged or in any way liable for the payment of a debt to him, the plaintiff may be allowed, under an order of the court or justice of the peace for that purpose, to pay or tender the amount due to the garnishee; and he shall thereupon deliver the goods, chattels, choses in action and effects, in the manner before provided, to the officer who holds the execution." This mortgaged property was capable of manual delivery. In order to make a valid levy by execution upon such property, the officer holding the execution must seize and take the property into his possession and custody. But he is not authorized to do this where the goods and chattels sought to be taken are in the possession of a mortgagee thereof. The interest of Cadwell & James in the mortgaged property could only have been reached by execution, by following the manner and pursuing the course pointed out in and by the section of the statute above named. Inasmuch as this was not done, the execution sale relied on by appellant must be held irregular and void.

As to the third proposition, we agree with counsel that this is an equitable action, and that the usual course in an action to redeem is to ascertain the amount due upon

the mortgage indebtedness, and to decree that, upon the payment thereof, the property be surrendered, or the title thereto conveyed, to the party entitled to redemption. Being an action, then, for an accounting and redemption, we are unable to see how the question of conversion had much, if anything, to do with it. That pertains more to a law action. The appellant having the legal title, her possession cannot be said to be wrongful. All that is said in the pleadings about a wrongful conversion may be disregarded. The real merits are not affected thereby.

Viewing the action in this light, it is said that the court had no power or authority to fix a price upon the mortgaged goods, and require the appellant to take the same at such price. This is true in an action for redemption, as applied to mortgaged property remaining on hand, and capable of ascertainment and identification. *Bragelman v. Daue,* 69 N. Y. 70. But where, as in this case, the property consists of merchandise stocks, to which new supplies have been added by the mortgagee, and the new goods intermingled with the old, thus rendering their identification impracticable and perhaps impossible, and it is not shown what goods are still on hand, the principle here invoked is not applicable. No list or invoice of such articles or portion of the old goods still remaining unsold was furnished in proof. It was the duty of the appellant, or at least such burden rested upon her, if she wished to avoid being charged with their value, to furnish such proof. She having failed to do this, the court pursued the only course left open for it to pursue under the evidence, so far as we are enabled to discover. A decree of redemption must have something definite on which to operate. Again, no separate account was rendered of the amount realized by the appellant from the mortgaged goods sold, and the court was left without the necessary proof to determine how the mortgage indebtedness stood — whether it was paid or not,

and, if not, what portion of it still remained due. Under such a situation, and with such a state of evidence, the action of the court was not unauthorized, but, in our opinion, was consistent with the issues and proofs made and produced. So far as the furniture and fixtures are concerned, of which there is definite evidence, the decree of the court was practically one of redemption. Of this part of such decree the appellant ought not to complain, for she was given the privilege to deliver them up or pay their value.

The fourth proposition argued by counsel is likewise untenable. The fact that Cadwell refused to join as a plaintiff in the action, and was therefore made a defendant, does not change either the nature or scope of the action. Cadwell had the right and the opportunity to ask for protection, but kept his mouth closed, said nothing, and allowed a default to be entered against him. What rights he may have we are not called upon to decide. We simply leave him where he has voluntarily placed himself. The appellant cannot be subjected to any claim at his hands, for the entire matter, as between her and the mortgagors, has been adjudicated in this action. The law does not permit the splitting of a demand. It does not "tolerate a division of a joint right of action into several actions. The whole cause of action must be determined in one, and thus avoid a multiplicity of suits." *Nightingale v. Scannell*, 6 Cal. 507. (This citation, together with the reason on which it is based, was withdrawn on the rehearing.)

The chief difficulty in this case arose from the fact that the parties did not complete their agreement in writing when the loan was made and contracted. If this had been done, all the trouble and expense which ensued might, perhaps, have been averted. The appellant set up and relied in the suit upon an agreement or defeasance under which she claimed the right to sell the mortgaged goods at retail, to add new supplies thereto as occasion might re-

quire, and to charge the cost of such new supplies and the expenses of operating the two establishments to Cadwell & James, the mortgagors. The appellee denied this, and the court found that no such agreement existed. The evidence in regard to this matter, as well as concerning all other material questions, was very conflicting, and we are not disposed to disturb the findings of the court in relation to the same.

If no such agreement existed, then the rights of the parties were very plain and simple. A mortgagee in possession, after forfeiture, is possessed of the absolute legal title (Jones, Chat. Mortg. § 699); and, as a general rule, the mortgagor has no other interest than the equitable right to redeem. Id. § 683. No action of a legal nature, nor other adequate remedy than that adopted, was available to the appellee. He was obliged to pursue it or none. At least, no other remedy has been suggested or pointed out by counsel for appellant, and none suggests itself to us. Where a mortgagee has sold a part of the property, and the mortgagor is entitled to redeem, the mortgagee is liable to account for the value of the property sold. Jones, Chat. Mortg. § 702, and authorities there cited. A mortgagee in possession is a constructive trustee while the equity of redemption exists. 1 Perry, Trusts, § 243. An equity of redemption in personalty may be foreclosed by a decree of court or by a sale of the mortgaged property at public auction, upon reasonable notice to the mortgagor. Jones, Chat. Mortg. §§ 673, 707, 708, and authorities cited. The rights of the parties in this case are pretty thoroughly elucidated by the authorities hereinbefore cited, as well as by the following: *Boyd v. Beaudin*, 54 Wis. 193; *Stoddard v. Denison*, 38 How. Pr. 296; *Blodgett v. Blodgett*, 48 Vt. 32.

The court below allowed to the appellant credits aggregating $943.25, for clerk hire and other expenses, including rents, incurred by her in running said stores, for the period intervening between the time she went into

possession thereof and the commencement of this suit; being a period only a little in excess of two months. The court also allowed the appellant a credit of $1,090.05 for and on account of a judgment obtained by one Lyster against Cadwell & James, and assigned by Lyster to her husband, Joseph Metzler; the same being the judgment under which the execution levy above considered was made. Although the court found that this sum had been paid by her for said judgment, yet her husband testifies, and all the other testimony concerning the same shows, that the appellant had no interest in said judgment, and that no part of her money or means was invested therein, or expended in the purchase thereof. So that, in the matter of such credits, the court, we think, dealt quite liberally with the appellant.

We discover no error in the record of which the appellant may complain, and are of the opinion that the judgment should be affirmed.

RISING, C.    I concur.

STALLCUP, C.    I dissent.

BY THE COURT.    For the reasons assigned in the foregoing opinion the judgment of the superior court is affirmed.

*Affirmed.*

### ON REHEARING.

DE FRANCE, C.    In the opinion announced in this case it is held that the execution sale under the Lyster judgment was irregular and void, and that the damages awarded to appellee should be permitted to stand.

It is insisted, upon the rehearing allowed, that these rulings are not correct. Upon a careful reconsideration of the questions involved, giving due consideration to the suggestions of counsel, we must adhere to the conclusions reached. The facts are stated in the opinion of the court, and the language of the opinion should be consid-

ered and applied with reference to the facts. The mortgagee was in possession of the goods when the execution was issued and placed in the hands of the officer. The mortgagors, who were the defendants in the execution, had no interest in the goods except a mere equity of redemption. The officer levied the execution upon the mortgaged goods, and sold them as the property of the mortgagors, the same as though the mortgage had not been in existence. No garnishment proceeding was attempted against the mortgagee. The mortgagors were present at and objected to the execution sale. Upon these facts we held that the sale was irregular and void. An equitable interest in personal property could not, at common law, be seized and sold under a writ of *fieri facias.* This proposition is not disputed. But it is claimed that this common-law rule has been changed by statute.

We are referred to sections 1835 and 1883, General Statutes of 1883, and to the fourth subdivision of section 101, and to section 106 of the code, in support of this claim. Section 1835, and many other sections of the same chapter, relating to judgments and executions, were taken from the laws of the state of Illinois, and had received a construction by the courts of that state before their adoption by the territory of Colorado. It is there held that the equity of redemption of a mortgagor in chattels is not subject to an execution at law where the possession of the chattels has been transferred to the mortgagee. *Prior v. White,* 12 Ill. 261. And it is also held there that "the mortgagor of a chattel, having the right of possession for a definite period, has an interest which may be sold by the execution." *Merritt v. Niles,* 25 Ill. 282. These decisions are based upon the statute, and recognize the distinction between equitable and legal interests in personal property. To the same effect are *Palmer v. Forbes,* 23 Ill. 301; *Pike v. Colvin,* 67 Ill. 227. Section 1883, referred to, has no reference to personal property.

The provisions of the code relating to attachments, and referred to by counsel, do not authorize the officer serving the attachment writ to take personal property from the possession of the mortgagee thereof. The proceeding there authorized to reach personal property in the hands of a third person is a proceeding by garnishment. A garnishment proceeding is a proceeding at law — a suit. Freem. Ex'ns, § 159; 2 Wade, Attachm. § 332. It reaches, as a general rule, none but assets at law, or legal interests. Freem. Ex'ns, §§ 159, 162, and authorities there cited. Also, *May v. Baker*, 15 Ill. 89; *Webster v. Steele*, 75 Ill. 544. The intention to include equitable interests should be clear; otherwise they are not included. These provisions of the attachment act speak of "debts, credits and other personal property belonging to the defendant," or a "debt owing to him." A mortgagee of goods who is in possession after forfeiture is the legal owner, and, if garnished under the attachment act, could well and truthfully answer that he had no property in his possession belonging to the defendant. The latter part of section 106 provides that "the court or judge may, after such examination, order personal property capable of manual delivery to be delivered to the sheriff upon such terms as may be just, having reference to any liens thereon or claims against the same." But this may well be governed by what precedes, and refer only to property of which the defendant is the legal owner. A person may have a lien upon personal property in his possession, or a claim against the same, and not be the owner of the property. It is not clear, therefore, from these attachment provisions, that a mere equity of redemption in mortgaged goods, where the mortgagee is in possession, is intended to be included in the list of property interests authorized to be reached by such provisions. These provisions could hardly have been intended to aid an execution; for, at the time the code was adopted, our law authorized a garnishment proceeding in aid thereof (Rev.

St. 1868, § 38, p. 381), and this continued in force thereafter until the enactment of the garnishment act in 1877 (Gen. Laws 1877, § 1439, p. 533). The garnishment act of 1879, printed in General Statutes of 1883, commencing at page 516, expressly authorizes the sale upon execution of an equity of redemption in mortgaged goods, and provides the manner in which it shall be done. In our opinion accompanying the decision of this case we referred only to one section of this act, being section 1567, General Statutes of 1883. Our reference would have been more pertinent, perhaps, had we included the whole act, or at least some other sections thereof, as well, but still the opinion in this respect cannot be misunderstood. The right to subject equitable interests to sale upon execution is conferred by this garnishment act, and hence the statutory recognition of such right, which the learned counsel says is found in said section, is but a recognition of the right conferred by the act itself, of which said section is a part.

But it is claimed that the provisions of section 1567 are all in the interests of and for the protection of the garnishee, and that, being for his benefit, he may waive all proceedings thereunder and consent to a seizure and sale of the mortgaged goods (in a case involving a mortgage), that such sale will pass the equity of redemption to the purchaser, and that the mortgagor may not complain. We cannot consent to the proposition that one can be deprived of his rights or property in a manner not authorized by law, and have no right to complain of the unlawful act of deprivation. It is held that a garnishee, in the absence of a provision in the statute under which the garnishment proceeding is instituted authorizing the same, may not even waive the service of the summons so as to render the judgment binding upon the defendant in the execution. 2 Wade, Attachm. § 361. The institution of such a proceeding is for the benefit of the plaintiff in the execution. The answer of the garnishee

and "the order of the court or justice of the peace" are likewise for the benefit of the plaintiff. None of these things could be waived by the mortgagee without the consent of the mortgagor. *Hebel v. Insurance Co.* 33 Mich. 400. The validity of the sale was denied by the replication in a manner, it is true, not in compliance with the rules of good pleading; but such denial was not attacked by motion or otherwise, and the question as to the validity of the sale was treated at the trial as in issue, by the introduction of the execution in evidence by the appellant, and in other respects, and we think it too late now to interpose the claim that the sale was admitted by the pleadings.

The judgment rendered in favor of James is for the full value of the mortgaged goods as found by the court. It is objected that, as Cadwell was an equal partner with James, the latter should have been permitted to recover only one-half, and that the damages are therefore excessive. We fail to see how the appellant is interested so as to raise this objection. Cadwell does not make the complaint, and he is the person mostly interested. It is said, however, that his refusal to join in the suit, the fact that he was made a party defendant, and his subsequent default operate as a waiver or release of his interest in favor of appellant. But this claim, we think, is not well founded. Cadwell was a necessary party, being jointly interested with the plaintiff in the subject-matter of the suit, and in the relief demanded. His refusal to join in the suit did not operate as an assignment of his interest to the appellant, nor could his subsequent silence have any such effect. The statutory provision under which he was made a defendant had no such object in view. The law has a more tender regard for property rights than to confiscate them upon any such ground, or for any such reason; and no one can be deprived of such rights without his consent, except by due process of law.

It is also said that, inasmuch as the judgment does

not provide for Cadwell's participation therein, his rights are cut off by the law of estoppel. No authority is cited or referred to in support of this proposition, and we are not aware of any that is in point. On the contrary, we find that Bliss, in his work on Code Pleading, section 78, in discussing the rule by which an unwilling plaintiff may be made a defendant, uses the following language: "If the joint promisees are trustees, the fund can be recovered only for the benefit of the beneficiary; if they are partners, it must go to partnership fund." This, we think, is the correct rule in a case like the present. Cadwell and James are partners. The mortgaged property sought to be redeemed belongs to the partnership. No dissolution of the partnership is sought in this action; nor is a severance of interests, or a distribution of the recovery, asked by either partner. If the mortgaged goods had all been kept so that a redemption could have been ordered, and an indebtedness had been found due to appellant upon the mortgage, she could not have been compelled to accept a partial payment and make a partial surrender of her securities; and if Cadwell had still remained inactive, and refused to furnish his share of the money necessary to be paid to secure the redemption, James would have been obliged to furnish the whole in order to recover, and in such event the court would not have undertaken to apportion the goods between the partners; nor would it, had each of the partners contributed his share of the money, especially in the absence of a request so to do from either partner. Cases may quite frequently arise in which the property to be redeemed would not be susceptible of division except by ordering a sale and division of the proceeds, and as a general rule no sale would be ordered without the request of one or more of the parties interested. Moreover, there should be no distribution of partnership assets among the partners, as a general rule, until the partnership debts, if any, are paid. The rule, therefore, that the recovery in

this and like cases should go to the partnership fund affords but a just protection to the partnership creditors, should there be any such. The decree upon its face shows that there was no severance, and cannot operate as an estoppel upon Cadwell in this regard.

We refrained in our former opinion from any expression upon the question of Cadwell's present rights, for the reason that we deemed it unnecessary in the decision of the case, and for the further reason that it might appear like deciding something not before us; but, upon a reconsideration of the matter, we deem it advisable to add these views as a further reason in support of the conclusion reached.

The California case cited in our former opinion, being a case at law, is perhaps not wholly applicable, and we therefore withdraw the same, together with the reason upon which it is based.

We adhere to the conclusion reached in our former opinion.

PER CURIAM. For the reasons assigned in the foregoing opinion the judgment heretofore, on March 16, A. D. 1888, entered herein, shall be and stand as the judgment of the court on rehearing.

*Affirmed.*