First National Bank of Colorado Springs v. Wilbur.

1. Chattel Mortgage — Rights of Parties on Foreclosure.— The common-law rule that trover will not lie in favor of the mortgagor against the mortgagee who has taken possession of the goods for condition broken is not changed by the Code of Civil Procedure, which abolishes the forms of action, and hence, in the absence of fraud, the mortgagor cannot recover of the mortgagee the difference between the value of the goods taken possession of by him and the price for which he sold them.

2. Rights of Prior Mortgagee.— Where a sale of mortgage chattels is made subject to a prior mortgage, the right of action for the money due thereon is in the prior mortgagee.

3. Rights and Liabilities of Mortgagee in Possession After Condition Broken.— The mortgagee in possession after condition broken has a title which falls short of being absolute, to the extent that he is bound to exercise reasonable care and diligence in disposing of the goods, and to account for any surplus after payment of his debt.

*Appeal from District Court of Arapahoe County.*

In October, 1882, Matthew C. Wilbur brought this suit against the First National Bank of Colorado Springs to recover the difference between the price at which certain personal property was sold under mortgage by the bank, and its value in the market at the date of sale; and also to recover the difference between the actual value of certain assigned book accounts and the price at which the same were sold.

The complaint in form is analogous to one in the old action of trover, and contains all its essential elements. It set up the ownership of the plaintiff in the goods, the possession and conversion by the bank and its co-defendant, Halthusen, and prayed a money judgment. The value of the chattels is stated to be $12,600 in this pleading, and the book accounts at $1,300.

. The answer admits the indebtedness of plaintiff in the sum of $4,000 on the 1st of August, 1882, and alleges that said indebtedness was secured by three several mortgages upon the livery stock of plaintiff, and by an assignment to

it of certain book accounts. It admits that the property described in the complaint was a correct list of the property taken possession of by plaintiff on August 1, 1882, under the several mortgages; it denies that the property was of the value of $12,675, as alleged in the complaint; states its true value to have been no greater than $7,400, and the book accounts transferred, of no greater value than $400.

It is alleged also in the answer that said mortgages "given to secure said indebtedness as aforesaid were given subject to a prior chattel mortgage held by Ruth A. Newton upon the same property to secure her in the payment of $4,000 and interest thereon at ten per cent. per annum from April 20, 1881, no part of which has been paid." And this is not denied in the replication. The sales to the defendant Halthusen upon the 8th day of August, 1882, are admitted in the answer, but all collusion and bad faith is denied. It is expressly alleged that said transfers were made subject to said prior mortgage to Ruth Ann Newton aforesaid, and this also is not denied. It alleges violations by appellee of the provisions of the chattel mortgages and justifies the taking possession of the property. Without objection the cause was tried to a jury, and under oral instructions, resulting in a verdict for the plaintiff, Wilbur, of $8,138.82, with interest amounting to $2,708.41. The interest was subsequently remitted. No specific objection was taken to the charge; one in the general form of an "exception in favor of the defendant" was saved.

At the trial it appeared that in the spring of 1881, plaintiff Wilbur and one J. E. Newton formed a copartnership for the carrying on of the livery business at Colorado Springs.

On the 12th day of October, 1881, the firm was indebted to the defendant bank in about the sum of $3,300. It appeared that at this date one Humphrey, who was connected with the institution, had signed an appeal bond for the benefit of the firm. To secure both the indebtedness and

the contingent liability, the firm on the day named executed a chattel mortgage upon all the livery stock owned by it, which is specifically set out both in the instrument and in the complaint.  Later, the liability upon the bond was apparently extinguished, and the mortgage stood as security for the loan.  By its terms and the tenor of the note, it was due one year after its date.  It contained all the usual grinding provisions of that class of securities as taken by financial institutions, but was expressly made subject to the prior mortgage of Mrs. Newton.  In case of default in payment of the principal, or of the interest, which was to be paid monthly, or in the event of an attachment against the firm, or in case the mortgagee should feel "insecure or unsafe in his security," the mortgagee was authorized to take "immediate and full possession," and to "proceed to sell the said property at public or private sale, on such terms and for such price or prices, in such manner, and to such persons as he might see fit."  The debt was not diminished by the payment of any part of the principal, and was increased by a failure to pay the accrued and accruing interest.  Later, and in May and July, 1882, the security was somewhat increased by mortgages on other property which had been added by purchase to the stock.  These later mortgages were given to secure the identical paper and indebtedness protected by the original instrument.

The course of dealing had resulted in the creation of other debts between the parties which appeared to exist in the shape of overdrafts, and a general bank balance against the firm.  In July, 1882, as a further security to cover all existing debts, the firm, by assignment, transferred to the bank all its bills receivable and book accounts, amounting in value to something like $1,000.

Wilbur was left in charge of the collections, and continued to run the business until about the 1st of August, when he voluntarily turned over all the property covered by the mortgages to the bank which held the securities. At the time of the formation of the copartnership between

Wilbur and Newton, the firm executed a mortgage to Newton's mother, Ruth Newton, to secure her for the $4,000 which she had loaned her son to put into the business.   The defendants offered this mortgage in evidence, as also the indorsement on its margin showing its satisfaction on the day following the sale to Halthusen.   Neither the instrument nor the indorsement was admitted in evidence, and defendants saved an exception to the ruling of the court upon that question.   The bank took possession, as the record shows, under the several mortgages executed by the firm covering the property described in the instruments.

It was conceded on the trial, and for all its purposes, that the bank had a right by the terms of the securities to take possession as and when it did.   On the 9th of August, 1882, after the bank had gotten the property under its control, it sold the entire stock at private sale, in a lump, together with the assigned book accounts, to Halthusen, and put him in possession.   The price for which both the stock and accounts were sold was $3,500.   With the proceeds the bank canceled the original note of $3,221.17 and surrendered it to Mr. Newton, formerly one of the concern.   The balance was credited to the unsecured account, which amounted to about $470; this left a balance unpaid, which was charged to profit and loss, but it still stood as a claim against the concern.   It was clearly established on the trial that the price which Halthusen paid was far below the actual value of the property, unless he took subject to, and was compelled to pay, the Newton mortgage.

After the verdict a motion for a new trial was filed and overruled.   From the judgment entered upon the verdict in favor of the plaintiff Wilbur, the bank appeals.

Mr. L. S. Dixon and Mr. A. E. Pattison, for appellant.

Mr. M. B. Carpenter, for appellee.

MR. JUSTICE HAYT delivered the opinion of the court.

To hold that an action in the nature of trover can be maintained under the circumstances of this case would be contrary to the uniform current of both American and English authority.  To support such an action the plaintiff must allege and prove a right of possession in himself, and a conversion of the property by the defendant.  The right of possession being in the mortgagee, the mortgagor cannot, after default, maintain trover against him for a refusal to surrender the property or for selling it.  It is no answer to say that the forms of action have been abolished by our Civil Code.  The legal and equitable rights of the parties must still be determined by the same principles that measured the rights and liabilities under the former practice.  Jones on Chattel Mortgages, secs. 435, 436; *Landon v. Emmons*, 97 Mass. 37; *Horn v. Reitler*, 12 Colo. 315; *Exchange Bank v. Ford*, 7 Colo. 314.

" A mortgagor, after condition broken, while the chattels remain in the hands of the mortgagee, may, under proper circumstances, maintain a bill in equity to redeem or a bill for an accounting after they are disposed of, and perhaps an action for damages when the conduct of the mortgagee has been negligent or oppressive; but these actions proceed upon principles quite different from an action of replevin." *Horn v. Reitler, supra.*

The complaint proceeds upon the theory that the property was unlawfully converted by the defendants, while admitting that the mortgagee took possession of the property after condition was broken.  No facts are alleged going to show that the defendants were properly charged with fraud, negligence or oppression.  From this brief statement it will be seen that the pleading is so radically defective that it could not have been sustained if a proper demurrer had been directed against it.  Instead of demurring, however, appellant answered, taking issue upon the allegations of the complaint, and alleging a *bona fide* sale of the prop-

erty to Halthusen, and the due application of the proceeds of such sale to the extinguishment of the secured indebtedness.

Should it be conceded that the issues were by the answer and replication broadened sufficiently to admit proof of fraud had such evidence been tendered, none was offered except as the inadequacy of price may have tended to establish such fraud. The cause seems to have been tried upon a mistaken theory throughout. The scope and nature of the issues, as understood by counsel at the trial, are made plain by the charge of the court to the jury. They were told that the principal things to be determined were the amount of plaintiff's indebtedness to the bank, and the value of the property taken by it. If the value of the property exceeded the indebtedness, the jury were plainly told that the plaintiff was entitled to recover the balance. These were the only questions left by the charge for the jury to determine. No question was submitted to the jury as to the *bona fides* of the sale of the mortgaged property. This should not be considered a matter of surprise in view of the entire omission of evidence specially directed to this point. The proof is not sufficient to support any cause of action that can be maintained by a mortgagor against a mortgagee in possession after condition broken.

Appellee seeks to charge the defendant bank upon the assumption that it had taken property to which the plaintiff had a legal title, and having disposed of it by sale, it was responsible to him for the difference between the price realized and the market value of the property at the time. It is clear, upon the authorities, that the bank was not responsible upon any such hypothesis, and that the sale as disclosed by the record was not a conversion for which it could be held liable. *Landon v. Emmons, supra; Atchison v. Graham,* 14 Colo. 217; *Metzler v. James,* 12 Colo. 322; *Heyland v. Badger,* 35 Cal. 404; *Stamps v. Gilman,* 43 Miss. 456; *Bragelman v. Dane,* 69 N. Y. 69.

Aside from this, the judgment rendered is excessive and

cannot for this reason be allowed to stand. The chattels at the date of the sale to Halthusen are alleged in the complaint to have been of the value of $12,600 and the book accounts $1,300, making a total of $13,900 as the greatest possible value of the property. As against this, the record discloses that Mrs. Newton held a mortgage upon the property for $4,000 and accrued interest, amounting at the time of the trial to the sum of $400. To this total of $4,400 should be added the sum of $3,500 received from Halthusen, and we have a total of $7,900 as the consideration for the sale by the bank to Halthusen.

If the proof had supported the allegations of the complaint as to the value of the property, and had it been otherwise sufficient, appellee would have been entitled only to a judgment for the difference between these two amounts, or $6,000, while the judgment rendered is for $8,138.33. The proof, however, fell short of sustaining the allegations of the complaint in reference to value.

As we have seen, it is admitted by the pleadings that the sale was made subject to the Newton mortgage for $4,400. And although it does not appear that the attention of the court below was called to this state of the pleadings at the trial, nevertheless the parties to the litigation and their attorneys must be held to have understood that such title as Halthusen acquired was subject to the Newton mortgage. This money was due Mrs. Newton. It was never paid to the bank, and it was neither liable to Mrs. Newton nor to the plaintiff for it. Such rights as she may have had by reason of the mortgage upon the property were neither extinguished nor in any way impaired by the sale to Halthusen. If any person was entitled to recover this amount, it was Mrs. Newton and not the plaintiff, and she is not a party to this action.

In view of a retrial of the case, we deem it necessary to notice briefly the contention of appellants that the title of a mortgagee in possession after condition broken is absolute. While his title is sometimes stated to be absolute, this is

only true at law, and the use of the word, even in this connection, is misleading, in view of the reserved rights of the mortgagor as defined by the modern decisions. It is now well established that he will be held to the exercise of reasonable care and diligence in the disposition of the property, and also to account for any surplus remaining after his debt is fully discharged. *Bird v. Davis*, 14 N. J. Eq. 474; *Stromberg v. Lindberg*, 25 Minn. 513; *Webber v. Emmerson*, 3 Colo. 248; *Metzler v. James, supra; Wygal v. Bigelow*, 42 Kan. 479; *Leach v. Kimball*, 34 N. H. 568; *McConnell v. The People*, 84 Ill. 583; *Hungate v. Reynolds*, 72 Ill. 425.

The judgment will be reversed and the cause remanded with directions to the district court to allow the parties to amend the pleadings as they may be advised.

*Reversed.*

MR. JUSTICE ELLIOTT, having presided at the trial below, did not participate in this decision.