FIRST NATIONAL BANK OF LEAVENWORTH, KANSAS, Appellant, v. WRIGHT, Respondent.

St. Louis Court of Appeals, February 2, 1904.

1. **WITNESS: Wife's Testimony: Agency.** A wife, who kept her husband's accounts, did his writing and at his dictation wrote letters to the mortgagee concerning a note and chattel mortgage on his cattle, was not his agent so as to make her a competent witness for him, under section 4656, Revised Statutes of 1899, in regard to a settlement of the note, had between her husband and the agent of the mortgagee.

2. **EVIDENCE: Contents of Lost Instrument.** Where one party to a suit claimed to have lost certain letters received from the other, and the other denied having written them, it was competent for the first to testify to their contents.

3. **AGENCY: Scope of Authority.** In an action on a note secured by chattel mortgage on some cattle, where the mortgagee, after some correspondence with the mortgagor concerning the condition and care of the cattle, sent an agent to look after them, with a letter of introduction, as claimed by the mortgagor, which was lost, and the mortgagor's testimony as to the substance of the letter, showing the scope of the agency, was somewhat indefinite, the evidence was insufficient to submit to the jury the question of the agent's authority to settle the debt, the mortgagee having denied the authority and the letter.

4. **CHATTEL MORTGAGES: Private Sale: Mortgagee as Trustee.** The mortgagee in a chattel mortgage, who sells the mortgaged property at private sale under a power in the mortgage, is thereby trustee for the mortgagor and bound to make the property bring the best price obtainable, or stand the loss.

Appeal from Ralls Circuit Court.—*Hon. David H. Eby,* Judge.

REVERSED AND REMANDED.

*Warner, Dean, McLeod & Holden* for appellant.

(1) Rosa L. Wright, the wife of the defendant, was not a competent witness under the statute. R. S. 1899, sec. 4656. At common law, the wife was not a competent witness for any purpose in an action by or against her husband. The statute removed her disability only in certain specified cases, one being "in all matters of business transactions when the transaction was had and conducted by such married woman as the agent of her husband. Hearle v. Kreihn, 65 Mo. 205; Lynn v. Hockaday, 162 Mo. 122; Wilden v. McAllister, 91 Mo. App. 451; Jessie Co. v. Wallace, 84 Mo. App. 378. (2) After proof of the agency is given, the testimony of the wife must be limited to the matters which come properly within the scope of the agency. Bliss v. Franklin, 13 Allen 244; Bruce v. Matthews, 101 Mass. 64; Bunker v. Bennett, 103 Mass. 516; Robertson v. Brost, 83 Ill. 119; Hale v. Danforth, 40 Wis. 382; Mountain v. Fisher, 22 Wis. 93; Robnett v. Rob-

nett, 43 Ill. App. 191; Esterbrook v. Prentiss, 34 Vt. 457. (3) The court erred in permitting the defendant and his wife to give oral testimony of their recollection of the contents of the letter written by the bank in reply to the defendant's letter of September 7th. The court ignored the well-established principle that where a document has been lost, before oral evidence can be given of its contents, it must first appear that no copy can be produced. In other words, the court ignored the degrees of secondary evidence and permitted the defendant to introduce the lowest form of secondary evidence in lieu of a higher and better form which is recognized as next best after the original. Briggs v. Henderson, 49 Mo. 534; Golson v. Ebert, 52 Mo. 269. (4) In the same way, it has been held that before oral evidence can be given of the contents of a lost instrument, which had been executed in duplicate, the duplicate must be accounted for and unless that is done the oral evidence is inadmissible. Matthews v. Railroad, 66 Mo. App. 665; Ins. Co. v. Goodrich, 74 Mo. App. 359; Stevenson v. Hoy, 43 Pa. St. 191; U. S. v. Britton, 2 Mason (U. S.) 468; Nash v. Williams, 20 Wall. 226; Harvey v. Thorpe, 20 Ala. 250; Williams v. Waters, 36 Ga. 458; Illinois Land Co. v. Bonner, 75 Ill. 315; Mercer v. Harnan, 39 La. Ann. 94. (5) The court erred in allowing the defendant to testify to the contents of the alleged letter of introduction because no competent evidence had been introduced to show the execution of this letter. Johnson v. Fecht, 94 Mo. App. 605; Holman v. Bacchus, 24 Mo. App. 629; Fowle v. Adams Express Co., 9 Mo. App. 572; Perry v. Roberts, 17 Mo. 40; Shea v. Seelig, 89 Mo. App. 146; Zollman v. Tarr, 93 Mo. App. 234; Briggs v. Henderson, 49 Mo. 531; Nichols v. Kingdom Iron Co., 56 N. Y. 618; Brown v. Massey, 138 Mo. 519; O'Connor Co. v. Dickson, 112 Ala. 304. (6) The witness Davis had no authority to make the alleged agreement to accept the cattle in payment of the debt. He

was a special agent clothed with power to deal with the defendant concerning the condition and care of the cattle. His agency went no further. He had no power to make any compromise of the debt or accept anything other than money in payment of it. Mechem on Agency, secs, 375, 376, 381 and 383; Story on Agency (8 Ed.), sec. 78; Hoster v. Lange, 80 Mo. App. 234; Sweet v. Sullivan, 77 Mo. App. 128; Bank v. Brightwell, 148 Mo. 364; Bank v. Bank, 151 Mo. 329; Cummings v. Hurd, 49 Mo. App. 139; May v. Trust Co., 138 Mo. 275; Barcus v. Hannibal Road Co., 26 Mo. 102; Henson v. Keet Mercantile Co., 48 Mo. App. 214; Willard v. Siegel Gas Co., 47 Mo. App. 1; Vanderline v. Smith, 18 Mo. App. 55; Maxwell v. Railroad, 91 Mo. App. 582.

*Allison & Allison* and *E. L. Alford* for respondent.

(1) It is well-settled law that an agent acting within the apparent scope of his authority may bind his principal though in fact he exceeds his authority. To escape liability the principal must prove that the third party knew the limitation of the agent's authority. Clack v. Electrical Supply Co., 72 Mo. App. 506; Knowles v. Bullene & Co., 71 Mo. App. 341; May v. Trust Co., 138 Mo. 275; 1 Thompson on Trials, sec. 1371; Galvin v. Railroad, 21 Mo. App. 273; Nicholson v. Golden, 27 Mo. App. 132. (2) Question of agency is a matter of fact and if there is any evidence tending to prove the authority of the agent then the act can not be excluded from the jury. McClung's Executors v. Spotswood, 19 Ala. 165-170; Krebs v. O'Grady, 23 Ala. 732. (3) The wife is competent to testify in behalf of her husband when she is his agent, and may prove such agency herself. Reed v. Peck, Guitar and Watson, 163 Mo. 333; Leete v. Bank, 115 Mo. 184; Ingerham v. Weatherman, 79 Mo.

STATEMENT.

In June, 1899, defendant purchased of W. B. Mc-Alister & Co., at Kansas City, Kansas, fifty-four head of cattle for $2,268. For the purchase price defendant gave his promissory note secured by a mortgage on the cattle. He moved the cattle to his farm in Ralls county, Missouri. At the maturity of the note a new one was given for the principal and accumulated interest on the original note, aggregating $2,378.45. The renewal note matured in six months from date and bore interest at nine per cent per annum from maturity. Before maturity, the note with the mortgage on the cattle was, for value, transferred by McAlister & Co. to the plaintiff bank. On November 7, 1900, the bank indorsed on the note a credit of $1,635.11. The suit is to recover the balance of the note.

The answer, omitting caption, is as follows:

"Now comes the defendant and for answer to plaintiff's amended petition herein, admits the execution of the note sued on as alleged in the plaintiff's said petition and denies each and every allegation in said plaintiff's petition and not herein expressly admitted.

"For other and further answer to plaintiff's said petition defendant states that on the fifteenth day of September, 1900, he paid the plaintiff the amount of said note in full and that said payment was then and there accepted and received by the plaintiff in full satisfaction and payment of the said note.

"Defendant further states that on the fifteenth day of September, 1900, and before the commencement of this action, he, the said defendant, delivered to the plaintiff fifty-two cattle of great value, to-wit, the value of — dollars in full satisfaction and settlement and discharge of the note herein sued on and of the cause of action in plaintiff's said petition mentioned, and which said fifty-two cattle the plaintiff then and there accepted and

received of and from the defendant in full satisfaction, settlement and discharge of said note sued on herein and of said cause of action in plaintiff's petition mentioned.

"And that at the time said cattle were so received by plaintiff, and at all times down to and including the seventh day of November, 1900, they were well worth the full amount of the principal and interest of said note. Defendant having fully answered asks to be discharged and for costs and for general relief."

The reply was a general denial of the new matter set up in the answer. The verdict and judgment were for the defendant. Plaintiff appealed.

About September 12, 1900, the plaintiff bank sent W. H. Davis to the farm of the defendant in Ralls county to see about the mortgaged cattle. After arriving there he took possession of the cattle for the bank, secured pasturage for them for six or eight weeks and then shipped them to Kansas City and sold them there on November 7th, under the mortgage at private sale. The net sum realized on the sale was $1635.11 which was credited on the note by the bank. The principal controversy in the case centers on an alleged agreement or compromise, testified to by defendant and denied by plaintiff's evidence, that Davis took the cattle in full payment and satisfaction of the note, and on the authority or want of authority of Davis as the agent of the plaintiff to make the alleged agreement or compromise, if it was made.

The note fell due June 26, 1900, when plaintiff wrote defendant making inquiry about the mortgaged cattle and their condition. This letter the defendant answered as follows:

"Vandalia, Mo., July 2, 1900.

"Dear Sirs:

"Yours received. There are 53 head of cattle on good blue grass. They will average now, I think, close

to 1,100 lbs. They have not been weighed for some time. The cattle will remain on the farm until sold. There is $65 more against these cattle beside the note you hold, for feed bill last winter. Cattle are worth the money and doing well.

"Yours truly,
"D. W. WRIGHT."

No further correspondence was had between the parties until September 7, 1900, when the defendant wrote plaintiff as follows:

"Dear Sir:

"The cattle are doing no good, shrinking every day. I am out of water in the pasture and can't do justice by them. I am not able to rent other pasture. I am ready to turn them over to you; you to pay a note of $65 against them for feed bill. I have put in two summer's grass and winter's feed and that is all I can lose on them.

"Yours truly,
"D. W. WRIGHT."

Plaintiff answered the above letter as follows:

"September 8, 1900.

"We are in receipt of your favor of the seventh inst. We were in hopes the cattle were getting better every day. If they are doing no good, something must be done at once. Please write me by return mail and say what, in your opinion, they will average in weight and quality, and if you would recommend shipping now."

On the following day defendant wrote the president of the bank as follows:

"A. Caldwell,

"Dear Sir: Yours just rec'd. In regard to the cattle the quality is good but they have shrunk until I hardly think they will average over 1,000 pounds. They did fine until my grass dried up and water gave out. I

have no grass where the water is and they have got to breaking in the corn fields and they act so I have to keep them in a lot and feed them green corn. I think you could get a pasture for them about eight to ten miles from here where there has been rain. The cattle are not ready for market. I will just have to give them up as I am not able to hold them. The cattle have nice big frames on them but no flesh. If the season had been as usual for grass and water they would have easily weighed 1,200 lbs. this fall. They should be put on good grass as soon as possible.

"Yours truly,
"D. W. WRIGHT."

Defendant testified that in answer to this letter he received a letter from the president of the bank, which he had lost and was unable to produce, and of which he had no copy. He was thereupon permitted to testify to its contents which he gave as follows:

"Well, answer to the letter to them, they just replied contents noted, and the man that acted for them as their agent to look after those matters for them was out and would be in in a few days and as soon as he returned they would send him down and any transactions that I and him might make would be perfectly satisfactory to them."

Defendant also testified that Davis brought with him a letter of introduction from the bank, at the time he took possession of the cattle, and that this letter had also been lost or destroyed and he had no copy of it. Thereupon he was permitted to testify from his memory of its contents which he gave as follows:

"Well, as I stated, this is to introduce to you our man Davis, who will represent us in this cattle business, and anything he should do or you and him should do in the transaction that would transpire between you two would be satisfactory to us; satisfactory to the bank; that was about the substance of it."

It is in evidence by both parties that Davis had the note and mortgage, and also defendant's letter of September 7, 1900, in his possession when he took possession of the cattle.

Defendant's evidence is that when Davis came to his place he had the cattle in a dry lot and was feeding them on green corn, and after much dickering and making of several propositions by him to Davis, and after Davis had repeatedly examined the cattle, he (Davis) finally agreed to take the cattle in full payment of the note, and to pay a feed bill of sixty-five dollars which defendant owed for hay he had purchased and fed to the cattle the previous winter.    That after making this agreement, Davis took possession of the cattle, hired pasture for them, paid the feed bill of sixty-five dollars and subsequently hired pasture of him (defendant) and put the cattle on it and kept them there until he shipped them to Kansas City.    Over the objections of the plaintiff, he further testified that at the time Davis took possession of the cattle there were fifty-two head (two of the original fifty-four having died) and that they would have averaged a thousand pounds in weight and were worth from four and one-half to four and three-quarters cents per pound, and when the cattle were sold by Davis, they were worth more on the market than was due on the note.    Over the objection of plaintiff, defendant's wife testified (by deposition) corroborating all of the material part of the evidence of the defendant.

The evidence on the part of the plaintiff is that A. Caldwell was the president of the plaintiff bank and the principal officer in its management; that all the correspondence of plaintiff in respect to the note and cattle was conducted by him, and letter-press copies of all letters written by him to defendant were kept; that he wrote neither of the letters claimed to have been received by defendant and lost, and that the letter-press books of the bank (produced at the trial) contained no

copy of either of the alleged letters.   That Davis was a farmer and a cattle dealer living near Lawrence, Kansas; that he never was at any time a general agent of the bank, but was employed occasionally to look after cattle for the bank upon which it had or was considering loans, but had never been employed or authorized by the bank to deal with any question of indebtedness on cattle, and that he had no such authority to deal with defendant.   That he was authorized to look after the cattle and had nothing to do with defendant's indebtedness to the bank; that all questions of indebtedness to it had been uniformily passed on by the bank itself.   Davis testified that he had no letter of introduction from the bank to defendant that he remembered of.   That defendant told him he had written the bank that he wanted to turn the cattle over to it and that he thought they would turn his paper back to him; that he told defendant he had nothing whatever to do with that, and said to defendant:   "We will have to get some pasture for these cattle, something will have to be done to save the bank and to save you."   Defendant said if he turned over the cattle he ought to have his paper, and that he (Davis) told him he had no authority to give him the mortgage or papers, and if he would not deliver the cattle on agreeable terms he would have to replevy them; that defendant then said he did not want to have any trouble, that he was willing to give the cattle up, that he had no water or feed to take care of them, and he (Davis) then said: "I will get a rig and go and hunt pasture for the cattle," and defendant volunteered to go with him, and they went and hunted pasture for the cattle.   He further testified that the cattle brought three dollars and sixty cents per hundred on the Kansas City market and sold for their full market value, and that no better offer had been made to him for the cattle by any-one at any time after he took possession of them.

BLAND, P. J. (after stating the facts as above.) —
1. The evidence of defendant's wife was admitted on
the theory that she was his agent. The only evidence,
if evidence at all, of agency is that she wrote her hus-
band's letters for him as dictated by him and kept his
accounts and did his writing generally. At common
law a married woman is disqualified to testify for her
husband in a civil suit brought by or against him; but
under clause 3, section 4656, R. S. 1899, she is not dis-
qualified to testify for him in respect to "any matter of
business transactions, where the transaction was had or
conducted by such married woman as the agent of her
husband." The transactions (if they may be called
transactions) testified to as having been conducted by
the wife for her husband as his agent, were writing
his letters at his dictation and keeping his books of ac-
count. The transactions about which she may testify,
under the statute, are transactions had with some per-
son other than her husband, and not transactions
had by the husband himself with some other person.
There is not a word of evidence that any agreement in
respect to the cattle or the debt was made by and be-
tween Davis and Mrs. Wright, as the agent of her hus-
band; on the contrary, defendant testified that the trans-
action was conducted by himself with Davis and all his
wife had to do with it was to write out the receipt for
the cattle as dictated by Davis. She was not defend-
ant's agent in this transaction, the transaction was not
conducted by her and she was an incompetent witness
and her deposition should have been excluded.

2. We do not think the court erred in admitting
defendant's evidence of the contents of the letters he tes-
tified he had received from the bank and had lost. The
evidence tends to show that the bank had no copy of
these letters, if they had ever been written, and it denied
that they had been written. In this state of the evi-
dence, the memory of defendant of the contents of these

lost instruments was the best and only means of repro-
ducing their contents. It is contended that there was
no proof of the execution of the alleged lost letter of
introduction. The letter was not received in due course
of mail, but if received at all, it was handed to defend-
ant by Davis who was sent to him by plaintiff as its
authorized agent; we think this was prima facie evidence
at least of its execution.

3. If there is substantial evidence tending to show
that Davis was authorized to settle or compromise the
debt with defendant, it must be found in the letters of
defendant or in those written by the bank to defendant,
as both Davis and Caldwell, president of the bank,
denied that any such authority was given. These letters
must be construed with reference to the specific object
had in mind when written. Mechem on Agency, sec.
306. The subject under consideration both by defend-
ant and the plaintiff, and to which their letters specific-
ally referred, was the present condition and the future
care of the cattle. The defendant was without water or
feed for them and voluntarily called the attention of
plaintiff to this fact by his letter of September 7th. The
cattle had to be cared for. Defendant was in a position
that he could not care for them. It was to the interest
of both parties that they should not be allowed to perish,
nor so shrink in flesh as to become of little or no value.
The bank and the defendant had this condition in mind
during the period of their correspondence as is shown
by the letters read in evidence. Nowhere is the debt
itself mentioned in this correspondence and the letters
furnish no evidence whatever tending to prove that
Davis was authorized to settle or compromise the debt.
The alleged lost letters, the contents of which were tes-
tified to by defendant, do not mention the debt. The
matters to which these letters refer were matters men-
tioned by defendant in his letters to plaintiff, to-wit, the
cattle and their condition, and "the transactions" to be

made by the man to be sent by the bank can not be construed to mean any transactions other than the possession and the care and disposition to be made of the cattle, hence these lost letters furnish no evidence that Davis was authorized to settle or compromise the debt itself. The circumstance that Davis paid the feed bill and had the note and mortgage in his possession, we think would (if there was other evidence tending to prove his authority to settle the debt) corroborate such evidence, but standing alone is of itself insufficient to prove such authority. Opposed to the evidence of defendant, that Davis did take the cattle in settlement and payment of the note and that he had authority to do so, stands out prominently the fact that, notwithstanding the debt, according to defendant's contention, was paid and settled and that he knew Davis had in his possession the note and mortgage, yet he got neither of them, nor did he demand them of Davis; instead he was contented to take from Davis the following receipt for the cattle:

"September 15, 1900.

"Received this day of D. W. Wright 52 head of cattle, the same being all now alive of the 54 head bought of J. B. McAlister Live Stock Commission Co. on June 21, 1899.

"W. H. DAVIS."

This conduct on the part of defendant is wholly inconsistent with defendant's contention, and not in accord with the usual course of business.

We think the evidence was wholly insufficient to submit to the jury the question of Davis' authority to settle the debt.

The mortgage provided that on default of payment of the note, the cattle might be sold at Kansas City at private sale by the holder of the note. They were so sold by Davis as the agent of the bank. In these circumstances, the bank was the trustee of the defendant

and was bound to sell at the best obtainable price in the Kansas City market on the date when sold. If they were sacrificed the bank should stand the loss. For the errors herein noted the judgment is reversed and the cause remanded. *Reyburn* and *Goode, JJ.,* concur, the latter in paragraphs 1 and 2.