EVELYN WELLS ULRICH, AS EXECUTRIX OF THE ESTATE OF BARRY S. ULRICH, DECEASED, v. THE SECURITY INVESTMENT COMPANY, LIMITED, CHARLES M. HITE AND HERMAN V. VON HOLT.

No. 2382.

ARGUED MAY 26, 1939.                    DECIDED AUGUST 23, 1939.

PETERS AND KEMP, JJ., AND CIRCUIT JUDGE METZGER IN PLACE OF COKE, C. J., DISQUALIFIED.

OPINION OF THE COURT BY PETERS, J.

This is a suit in equity to set aside a chattel mortgage and the foreclosure proceedings taken thereon for the cancellation of the mortgage and a reconveyance to the legal representative of the deceased mortgagor of the property sold upon foreclosure.

The plaintiff sues in her representative capacity as executrix of the estate of the late Barry S. Ulrich, Esq., for and on behalf of the heirs, creditors and all persons interested and concerned in the estate of the deceased.

The chattel mortgage involved is dated July 22, 1933, and was recorded August 30, 1934. The mortgagor is the late Barry S. Ulrich, Esq.; the mortgagee the Security Investment Company, Limited, an Hawaiian corporation. The mortgage purports to have been given to secure the payment of the demand promissory note of the mortgagor of even date in the principal sum of $1500, with interest at the rate of eight per cent per annum, and to assign by way of mortgage first, all of the mortgagor's interest in the firm business of Ulrich & Hite, a law copartnership;

second, all of the mortgagor's one-half interest in and to all outstanding fees owed said firm and his undivided one-half interest in all fees to be earned by said firm; third, all of the mortgagor's furniture, fixtures and law books then situated in the office of the firm, Dillingham Building, Honolulu; and fourth, all of the mortgagor's furniture, fittings, furnishings, linen, chinaware and, without limitation, all of his household belongings located in or about his residence at 1951 Vancouver Highway, Honolulu. The exact language employed in describing the property is quoted in the margin.[1]

On July 22, 1933, and at the time of the execution of the chattel mortgage referred to, the mortgagor Barry S. Ulrich and the respondent Charles M. Hite were attorneys at law and copartners practicing law together in the city of Honolulu under the firm name and style of Ulrich & Hite. The copartnership of Ulrich & Hite was formed in September, 1925. There were no written articles of copartnership. They were general copartners and shared equally in the profits and losses of the firm. On October 2, 1934, and on the same day that the chattel mortgage referred to was foreclosed, Mr. Hite filed in the territorial treasurer's office a formal notice of dissolution of the copartnership. On October 11, 1933, it was mutually agreed between the partners that from and after September 23, 1933, the partnership of Ulrich & Hite should continue as such only with respect to all firm obligations and all

---

[1] "First: All of his interest in the firm business of Ulrich & Hite, a copartnership; Second: All of his undivided one-half interest in and to all outstanding fees owed said firm, and his said undivided one-half interest in all fees to be earned by said firm; Third: All of his furniture, fixtures and law books now situated in the office of said firm, Dillingham Building, Honolulu aforesaid; Fourth: All of his household furniture, fittings, furnishings, linen, china ware, and, without limitation, all of his household belongings located in or about his residence at 1951 Vancouver Highway, Honolulu."

matters of unfinished business and business in process of investigation or upon which work had been done in the office prior to and as of that date and that all matters of business originating with or coming to either of the partners from and after September 23, 1933, should belong to and be handled by him individually free from the claim of the other. It was further agreed that during the continued joint use and occupancy of the same offices, the partners should contribute equally to all office overhead and expenses. The partners continued to occupy the same offices until March, 1934, when Mr. Ulrich sought separate offices of his own. Mr. Ulrich died in August, 1936.

On February 3, 1927, the firm of Ulrich & Hite was employed by George H. Holt, guardian of the estate of Eliza R. P. Christian, an incompetent, to recover and collect properties situated within the Territory stated to be of great value, both in lands and moneys, of which the incompetent had been allegedly deprived. The compensation of the firm was contingent upon recovery and was payable in kind. The terms of the employment were committed to writing and signed by the guardian and by both partners in the firm name.

On May 8, 1928, Ulrich & Hite, as attorneys for plaintiff, filed in the first circuit court of the Territory at chambers a suit in equity on behalf of the ward as plaintiff against the Waialua Agricultural Company, Limited, as defendant, which had for its object the recovery for the ward of an interest claimed by her in certain lands in the district of Waialua and for the mesne profits thereof. This case will hereafter be referred to as the Waialua case. The issues involved in that case and history of the litigation appear from the decisions of this court in 31 Haw. 242, 348, 817; 32 Haw. 30, 67; 33 Haw. 34; from the decisions of the United States circuit court of appeals for the ninth circuit in 52 F. (2d) 847; 93 F. (2d) 603;

162

94 F. (2d) 806; and from the decisions of the United States supreme court in 304 U. S. 553; U. S. Sup. Ct. (November 7, 1938).

Mr. Holt died in March, 1929, and he was succeeded by the defendant, Herman V. von Holt, and on March 12, 1929, Mr. von Holt, as successor guardian of the incompetent, adopted, ratified and confirmed the contract of employment entered into with Ulrich & Hite by his predecessor, Mr. Holt. On April 3, 1929, the contract of employment was amended. As originally executed it contained no provision for the costs and expenses that had been or might thereafter be incurred in connection therewith. Considerable professional work had been done by Ulrich & Hite prior to February 3, 1927, the date of the contingent contract, and extensive and protracted litigation was anticipated. And on April 3, 1929, in a letter to Mr. von Holt, the firm expressed itself as understanding that it was obligated to personally advance all expenses reasonably necessary in the performance of their employment on behalf of the incompetent and that in the event of recovery they would be reimbursed for all necessary and reasonable expenses theretofore or thereafter advanced by them. In July, 1929, a claim of the incompetent against the Waianae Plantation Company, Limited, of an interest in lands situated in the district of Waianae and in the mesne profits thereof was settled by way of compromise and to the extent that the contingent contract of Ulrich & Hite affected the recovery, the contingent contract, as amended, was approved by the judge of the first circuit court at chambers in the matter of the guardianship of the incompetent.

The mortgage reserved to the mortgagee the right upon default of the mortgagor to foreclose the mortgage by sale of the mortgaged property or any part or parts thereof at public auction or private sale. It was agreed therein

that the mortgagee or any person in its behalf might purchase at any foreclosure or private sale and that until default the mortgagor could hold and enjoy the mortgaged property and receive the benefit thereof. The mortgage was foreclosed by the mortgagee by sale at public auction pursuant to the power contained in the mortgage and the provisions of sections 4724 to 4728, R. L. 1935, both inclusive. Notice of intention to foreclose was published by the mortgagee for the statutory period in the "New Freedom," a local weekly newspaper published in Honolulu, that is, on the 1st, 8th, 15th and 22d of September, 1934. The mortgaged property was described in the published notice of intention to foreclose in the same manner as the same was described in the mortgage. Prior to foreclosure some of the office furniture included in item three of the mortgage had been released from the terms of the mortgage. Upon default of the mortgagor the mortgagee did not take into its possession any of the remaining property included in items three and four of the mortgage. They remained in the possession of the mortgagor and are now in the possession of plaintiff. The time and place of sale contained in the published notice of intention to foreclose were October 2, 1934, at 12 o'clock noon at the front entrance of the Judiciary Building. At the foreclosure the auctioneer was Charles M. Hite. At the foreclosure sale no announcement was made of what the assets of the copartnership consisted or what fees had been earned by and remained unpaid to the copartnership; no announcement was made either of the gross assets, liabilities or net assets of the copartnership as of that day; no announcement was made of what the office furniture or household furniture included in items three and four of the mortgage consisted, nor was any of the furniture physically present. The property was sold by bulk items as described in the mortgage and notice of sale. At the foreclosure sale the

defendant Charles M. Hite was the purchaser of item one described in the mortgage for the sum of $250 and the mortgagee Security Investment Company, Limited, was the purchaser of items two, three and four described in the mortgage for $100, $50 and $1, respectively.

The grounds for relief, as alleged in the amended bill of complaint, are: actual fraud in the conduct of the foreclosure of mortgage; gross inadequacy of price; payment; discharge by mortgagee after foreclosure of the indebtedness secured; waiver of foreclosure by purchasers under foreclosure and estoppel to assert title to chattels subject thereto. Upon the trial there was interposed the additional defense that the contingent fee in the Waialua case was not assignable by way of mortgage.

The allegations of fraud are substantially as follows: that "no notice of said mortgage foreclosure was ever given to the" mortgagor; "that every wrongful, unfair and inequitable means was used by the * * * Mortgagee to keep and prevent the * * * Mortgagor from gaining, seeking or receiving knowledge of the foreclosure of said mortgage"; that the mortgagor neither at the time of sale under foreclosure nor at any other time prior to his death had "any knowledge whatsoever of the foreclosure of said mortgage"; that the "means and methods used and employed" to prevent knowledge of the foreclosure were the "causing the notice of intention to foreclose * * * and the sale of said mortgaged property * * * to be published in * * * a mushroom and little known weekly newspaper with a very limited and fluctuating circulation in the City and County of Honolulu, and * * * knowingly, willfully and deliberately publishing such said notice in said newspaper during the month of September, 1934, when * * * [mortgagor] was seriously ill and under a doctor's care"; that "for a period of more than two years after the foreclosure of said mortgage, the defendant * * * Hite,

wrongfully, deliberately, and in the exercise of bad faith, and with the idea and purpose of taking unfair advantage of his law partner * *. * [the mortgagor] failed and neglected to notify or inform of his intention to foreclose or of the foreclosure of said chattel mortgage, thus wrongfully, unfairly and inequitably keeping and preventing * * * [the mortgagor] during his lifetime, from bringing an action to set aside the * * * foreclosure"; that at the time of the foreclosure and the sale the defendant Security Investment Company, Limited, sold the mortgaged property at "what purported to be a public sale of said property to the highest bidder at a sale conducted by the defendant * * * Hite, as the treasurer and manager of and the attorney for the defendant, Security Investment Company"; that the said Hite for himself and for the account of the mortgagee purchased items of the mortgaged property at grossly inadequate prices; that the defendants Security Investment Company and Charles M. Hite "made no inquiry of or for prospective purchasers of the property described in said mortgage or made no attempt whatsoever to sell said property for the reasonable value thereof to disinterested parties, but on the contrary the said defendants made every effort to keep the public in ignorance of said sale so as to discourage and prevent any competitive bidding on said property, all of which was done by said defendants in bad faith and with the wrongful, unfair and inequitable purpose and intent of preventing said property from selling for its reasonable value and thus and thereby enabled defendants to convert the same to their own use and benefit for a sum of less than one per cent of its value"; that one of the principal assets of the estate of the late Barry S. Ulrich "which was wrongfully, willfully and in bad faith converted to the use and benefit of the defendants by the wrongful and inequitable foreclosure of

said mortgage, was and is a claim for legal services which the said * * * [mortgagor] owned and held against the defendant, Herman V. Von Holt, as guardian of Eliza R. P. Christian, an incompetent person who was and is the plaintiff in the case of Christian against Waialua Agricultural Company," which said claim for legal services was of the reasonable value of $200,000; that the defendant Herman von Holt, as guardian of said incompetent, "for the purpose of precluding and preventing the said Barry S. Ulrich of and from maturing and perfecting any further claim against him as said guardian, demanded from, and forced and compelled the withdrawal of the said Barry S. Ulrich as counsel in the said case."

The trial court found adversely to plaintiff upon all of the allegations of the amended bill of complaint. It also found that the plaintiff's testate had been guilty of laches. A decree was entered accordingly and the plaintiff appealed.

The fraud upon which the claim for relief was predicated was alleged to have been committed by the defendants pursuant to a "scheme and conspiracy made and entered into by and between Charles M. Hite, as the law partner of and associate counsel with Barry S. Ulrich in the case of Eliza R. P. Christian, an incompetent person, against the Waialua Agricultural Company, and Herman V. Von Holt, the guardian of said Eliza R. P. Christian, to wrongfully and inequitably and fraudulently to deprive the said Barry S. Ulrich and his heirs and creditors of his and their interest in and claim to legal fees in said case upon which the said Barry S. Ulrich had been working for a period of more than ten years and against which he had and held a claim for fees of the reasonable and approximate value of * * *. $200,000.00." The trial judge found against the allegations of conspiracy. An examination of the record confirms his conclusion. The evidence considered includes

the offers of proof upon the rejected evidence of the witness Sai Chow Doo, Esq. Hence the specifications of error numbers eight and nine involving the propriety of the exclusion of the evidence of the witness Doo become immaterial.

There was no evidence directly or indirectly proving or tending to prove the conspiracy alleged. No complicity was shown on the part of von Holt in the perpetration of the frauds alleged. Mr. von Holt personally had nothing to do with the foreclosure of the mortgage except as an officer of the company to affix the corporate signature of the mortgagee to the notice of intention to foreclose. This of itself has no probative value of a fraudulent intent. Nor is the evidence that Mr. von Holt discharged Mr. Ulrich as one of the attorneys for the incompetent in the Waialua case in December, 1935, and compelled Mr. Ulrich to withdraw as one of the attorneys of record in that case in this court sufficient to show complicity. The inferences which the plaintiff seeks to have drawn from that evidence are not warranted. Mr. von Holt was acting upon the advice of counsel in the assumed discharge of the legal duties he owed his ward. As to von Holt, the amended bill of complaint was properly dismissed. The allegations of the amended bill also include the mortgagee Security Investment Company, Limited, as one of the conspirators. If, as we hereafter point out, the Security Investment Company, Limited, in respect to the mortgage involved was the mere *alter ego* of the defendant Hite a conspiracy between them was impossible. A man cannot conspire with himself.

Specifications of error numbers one to three, both inclusive, present for review the findings of the trial judge upon the alleged acts of fraud committed by the conspirators pursuant to the alleged conspiracy. The trial judge found the defendants innocent of fraud. In our opinion it is unnecessary to decide whether the foreclosure

sale was planned and executed to defraud the mortgagor. The legal duties imposed upon the mortgagee required it to use all fair and reasonable means in obtaining the best prices for the property on sale and it appearing that the sale was not made in good faith, that the amount received upon the sale was inadequate and that the mortgagee took a wrongful and unfair advantage of the mortgagor, the foreclosure sale must be set aside. "Whether this sale was planned and executed to defraud plaintiffs it is unnecessary to decide. It was certainly well calculated to take an unjust advantage of them. In the seizure of the property under the mortgages defendant owed a duty to plaintiffs. That duty required him to use all fair and reasonable means in obtaining the best price for the property on sale. The referee and the court found that the sale was not made in good faith nor the amount received upon the sale adequate, and that defendant took a wrongful and unfair advantage of plaintiffs. We think the finding on this point is fully sustained by the evidence. The sale, therefore, being unfair was void." *Kellogg* v. *Malick,* 125 Wis. 239, 252, 103 N. W. 1116. Moreover, "where the mortgagee himself purchases at the sale, the burden is on him to show that the sale was regularly and fairly conducted in every particular, and that an adequate price was paid for the goods sold; and if he cannot sustain this burden, the sale will be set aside at the election of the mortgagor." 11 C. J., tit. Chattel Mortgages § 517, pp. 711, 712. Holding as we do that the Security Investment Company, Limited, was but a nominal party to the note and mortgage and that the defendant Hite was the real party in interest, the real creditor of Ulrich and the real payee and mortgagee in the note and mortgage respectively, the duty devolved upon Hite as purchaser under the foreclosure sale to show "that the sale was regularly and fairly conducted in every

particular, and that an adequate price was paid for the
* * * [property] sold."

The evidence adduced in support of the allegations of
fraud is material, however, upon the question of whether
the sale was regularly and fairly conducted and will be
considered in that connection. The plaintiff by her amended
bill presented her case in a double aspect, *i.e.*, prayed
for specific relief upon the grounds of both fraud and gross
inadequacy of price. Under her prayer for general relief
she was therefore entitled to any relief warranted by the
allegations of the amended bill.

At this point it might not be inappropriate to digress
for a moment and dispose of certain preliminary questions
involved. In our opinion the lower court erred in holding
that the moneys to become due in connection with Ulrich's
interest in the Waialua fee passed by reason of the mort-
gage foreclosure sale. The contract of employment between
von Holt and Ulrich & Hite was for personal professional
services to be performed by the members of the firm and
was not assignable without the consent of von Holt. Nor
could the obligation of the firm to advance costs and ex-
penses reasonably necessary to prosecute the claims of the
ward, if enforceable, be transferred to another without the
consent of von Holt, the party entitled to the benefit of
the undertaking. Whether or not the assignment of a
contingent fee is legal or valid we deem unnecessary to
decide. Much may be said against such an assignment,
both from the standpoint of legality and validity. But
assuming both the legality and validity of a mortgage of
a contingent fee, such a mortgage is, at best, nothing more
than an executory contract under the terms of which the
creation of a lien is conditional upon the happening of the
contingency upon which the accrual of the fee depends.
And, until the lien comes into existence, it is not enforce-
able. At the time of the foreclosure and sale the Waialua

case was still pending. No final decree had as yet been entered. No recovery for plaintiff had been made. The contingency upon which the accrual of a fee depended had not occurred. No contingent fee was in existence. Hence no lien had attached. The foreclosure proceedings were abortive as far as the contingent contract was concerned or the contingent fee payable thereunder and the contractual relations of the parties as fixed by the contract remained unaffected and undisturbed thereby.

In considering the question of adequacy of price the net assets of the firm of Ulrich & Hite, as of the date of foreclosure, are considered exclusive of the value of any contingent fee payable to the firm upon successful recovery in the Waialua case. This eliminates from consideration specification of error number five in which appellant challenges the findings of the trial judge that the prospective Waialua fee was purely speculative and had no value in dollars and cents. In this connection the claim contained in specification of error number ten, that future fees other than the Waialua fee were not assignable, is overruled.

As a general rule equity protects the assignment by way of mortgage of present and future choses in action. Choses to accrue in the future are assignable by way of mortgage. (*Holroyd* v. *Marshall,* 10 H. L. Cas. 191; *Union Trust Co.* v. *Bulkeley,* 150 Fed. 510; *Tailby* v. *Official Receiver,* 13 L. R. A. 523.) There can be no difference in principle between choses to accrue for professional services to be performed and choses to accrue for future goods to be thereafter manufactured.

The mortgagee upon the foreclosure sale failed to exercise reasonable diligence and good faith in an endeavor to obtain the best possible prices consistent with such diligence and good faith.

Where a power of sale is contained in a chattel mortgage the covenant is implied that, if exercised, the mort-

gagee will execute the power consistent with his legal duties in the premises.

An encyclopedic statement of the duties devolving upon the mortgagee in the manner and conduct of a foreclosure sale pursuant to a power of sale contained in a chattel mortgage is as follows: "The mortgagee must deal fairly and justly with the property in the exercise of his power of sale. He must exercise reasonable care and diligence in disposing of the goods, and must sell them fairly and for an adequate price." 11 C. J., tit. Chattel Mortgages § 508, p. 708. In 2 Jones, Chattel Mortgages and Conditional Sales (6th ed.) § 801, p. 571, it is said: "A sale under a power must be fair and bona fide to have the effect of extinguishing the equity of redemption. The mortgagee has no right, by any unfairness, to sacrifice the property, and deprive the mortgagor of a surplus over the debt which might arise from a sale properly conducted; or make him liable for a deficiency greater than there would be under a sale fairly conducted." There are cases to the effect that where the mortgagee forecloses under the power of sale in the mortgage he stands with respect to the mortgagor's rights in the property in the position of a trustee. (*Stromberg* v. *Lindberg,* 25 Minn. 513, 515; *Bank* v. *Wright,* 104 Mo. App. 242, 78 S. W. 686, 688; *Kelly* v. *McCarty,* 75 Kan. 818, 88 Pac. 882.) There are also cases to the effect that the mortgagee of personal property upon foreclosure holds the same in his own right and is in no sense a trustee except as to the surplus which may remain after paying the mortgaged debt. (*Lee* v. *Fox,* 113 Ind. 98, 14 N. E. 889, 892; *British Columbia Land and Investment Agency* v. *Ishitaka,* 45 Can. Sup. Ct. 302.) Obviously all of the incidents of the relation of trustee and *cestui que* trust do not obtain. But sufficient incidents of a trust relation are present to require the mortgagee in the conduct of the sale to "exercise * *·* reasonable care and diligence in the dis-

position of the property," *First Nat. B. of Colo. Springs* v. *Wilbur,* 16 Colo. 316, 26 Pac. 777, 779; exercise "such reasonable care as shall produce the best results," *Barbee* v. *Scoggins,* 121 N. C. 135, 28 S. E. 259, 262; exercise "reasonable care and diligence in the disposition of the property," *Hincke Co.* v. *Bailey,* 83 Colo. 242, 263 Pac. 719; "exercise reasonable diligence and good faith in an endeavor to obtain * * * the best possible price consistent with such diligence and good faith," *Johnson* v. *People's State Bank,* 22 F. (2d) 211. (See also *Castner* v. *Darby,* 128 Mich. 241, 87 N. W. 199; *Henderson* v. *Fisher,* 38 Cal. App. 270, 176 Pac. 63; *Fleischmann* v. *Clausen,* 225 N. Y. S. 288; *Loza* v. *Osmola,* 279 Mass. 220, 181 N. E. 125.)

Section 4724, R. L. 1935, requires the mortgagee or any person having his estate in the mortgage to "give such notices and do all such acts as are authorized or required by the power contained in the mortgage."

One of the legal duties required of a mortgagee upon the execution by him of a power of sale contained in a mortgage is to exercise reasonable diligence to secure the best possible prices upon the foreclosure sale of the property to be sold. It appears from the evidence, however, that for reasons of his own the defendant Hite, who conducted the foreclosure, kept the sale as quiet as possible. With his reasons for so doing we are not here concerned. He selected a weekly newspaper of a circulation of about 300. He spoke to no one about the sale. Though he saw his partner almost daily, he made no mention to him of the impending foreclosure. His demand for payment made in the month of August previous made no reference to foreclosure. No one attended the sale except loungers about the courthouse door. Mr. Ulrich was not present. It is true that the only public notice of the intention to foreclose required by the statute is the publication thereof for the statutory period. One of the ordinary and usual

methods employed, however, to obtain the best possible prices on a foreclosure sale is to give the impending sale publicity. This Mr. Hite willfully refrained from doing. His failure to observe his duty in that regard was in direct violation of the implied covenant of the mortgage.

Moreover, the description of the property intended to be sold upon foreclosure as contained in the notice of sale was defective. It was in the same language as in the mortgage itself. And, while as between the mortgagor and mortgagee the description as contained in the mortgage might be considered sufficient to identify the property, the same rule does not apply in respect to the description of property advertised to be sold under foreclosure. A description of property intended to be foreclosed should be sufficient to inform the public of the nature of the property to be offered for sale. The description of the property to be sold was not calculated to interest purchasers. Of what the business of the firm consisted, of what the fees that it had earned consisted were not mentioned and no one could form any idea whether the description as given contained any property which he desired to purchase. Nor was any announcement made at the foreclosure sale by the auctioneer or otherwise of what the property to be sold consisted.

A further and additional irregularity appears. No opportunity was given prospective purchasers to examine the tangible assets offered for sale. None of the tangible assets included in the office and household furniture, the subject of items three and four of the mortgage, were physically present at the time of the sale. "In order better to realize the full value of the property sold, it is ordinarily held that it must be in plain view at the time of the sale." 11 C. J., tit. Chattel Mortgages § 510, p. 709.

Added to this the property mortgaged was sold by lump items. A lump offer of sale of chattels composed of

separate articles does not admit of discriminative bids. The chattels included in items three and four were capable of sale separately or in lots to suit the convenience of purchasers. Neither the mortgagor's interest in the firm's business nor the mortgagor's interest in fees earned was subject to sale until the deduction therefrom of the firm's debts. It was the mortgagor's interest in the firm's net business and his interest in the firm's net fees that were subject to sale, and they alone. Offer for bids on lump items presented nothing upon which purchasers could intelligently bid. "The mortgagee in selling under the mortgage is required only to act in entire good faith, and is not bound by any fixed rule as to sale in bulk or in parcels, but he must sell the articles separately, in lots or all together, as may best suit the convenience of buyers and insure the largest returns." 11 C. J., tit. Chattel Mortgages § 512, p. 710. "If the property consists of many different articles, which can easily be offered for sale separately, or in lots or parcels suited to the convenience of bidders, a sale of the whole in a lump might properly be regarded as an unfair mode of sale." 2 Jones, Chattel Mortgages and Conditional Sales (6th ed.) § 797, p. 568.

Finally, the defendant Hite occupied inconsistent positions upon the foreclosure sale. As we shall hereafter point out, he was in reality the mortgagee. Upon the foreclosure sale he also acted as the auctioneer and was the purchaser. "It is improper for the auctioneer to act as agent for the buyer." 11 C. J., tit. Chattel Mortgages § 513, p. 710.

Moreover, it affirmatively appears that the mortgagee, due to its neglect to observe the duties incumbent upon it, failed to sell the property subject to items one and two of the mortgage for an adequate price.

Items one and two of the mortgage covered all of the

undivided interest of the mortgagor in the firm business and all of the undivided interest of the mortgagor in and to all outstanding fees owed said firm and his undivided one-half interest in all fees to be earned by said firm. It might be said that the term "firm business" does not include tangible property. It appears that the firm acquired office furniture but details thereof are lacking. The inclusion of fees in the second item of the mortgage would seem to indicate that the "firm business" was not intended to include fees. However, the conclusion is inevitable that items one and two of the chattels described in the mortgage were intended by the parties to cover the undivided one-half interest of the mortgagor in and to all of the property of the copartnership, including accounts receivable and present and future fees. The effect of the mortgage therefore was to create a mortgage lien upon the one-half interest of the mortgagor in all of the assignable property of the copartnership.

To determine whether the considerations paid for the property described in the first and second items of the mortgage were adequate it becomes necessary to determine the fair and reasonable value thereof at the time of the foreclosure sale.

First, as to the firm's gross assets. Book accounts; fees earned. It would seem that during the existence of the mortgage Ulrich's cash withdrawals from the firm were unrestrained. In the aggregate they exceeded those of his partner Hite. After the foreclosure Hite retained all fees collected by him on account of the firm, evidently upon the theory that they were his exclusive property by virtue of the foreclosure sale. Ulrich also collected and retained some fees which were due the firm. The aggregate of the fees collected by the partners subsequent to foreclosure was considerable, appellant claiming that they aggregated $7356.19; appellee $5200. For the purposes of determining

the adequacy of the consideration paid upon the foreclosure sale for an undivided one-half interest in and to all of the net assets of the copartnership appellee's figures are sufficient for our purposes. In the absence of evidence to the contrary it may be reasonably assumed that all of the fees subsequently collected were earned prior to the foreclosure sale and that the aggregate sum realized subsequent to the foreclosure sale was the fair and reasonable value of the fees earned upon the day of foreclosure.

In addition to book accounts of fees earned the firm also owned upon the date of foreclosure a book account for moneys advanced on behalf of their client, in the prosecution of the Waialua case. The appellant contends that up to October 2, 1934, the date of the foreclosure, the copartnership had advanced on behalf of the ward the sum of $9937.26; the appellee $9887.28. The difference is apparently the result of errors in computation and we shall adopt the lesser amount as sufficient for the purpose of determining the value of this book account and its relation to the consideration paid for an undivided one-half interest in the net assets of the firm. In considering the value of this book account we are not unmindful of the fact that reimbursement of the items thereof was conditional upon recovery in the Waialua case and upon their having been reasonably and necessarily expended in the prosecution of the Waialua case. Assuming, therefore, in the absence of evidence to the contrary, that the items of this account represented items of cost and expenses reasonably necessary for the protection of the ward's interests in the Waialua case, the copartnership was entitled to be reimbursed in the full amount thereof upon recovery by the ward. What was the reasonable value of this book account upon the foreclosure of the mortgage? Its recovery unquestionably was speculative but it had a value. This court, in the Waialua case, had sustained the findings

of the trial court that the ward at the time of the execution of the deed in question made by her of the Waialua lands to the predecessor in interest of the Waialua Agricultural Company was incompetent and the deed voidable by reason of her incompetency. The trial judge in addition to setting aside that deed had awarded the plaintiff mesne profits in excess of one-half million dollars and while the decision of this court of May 3, 1934, rendered just five months before the foreclosure sale, reversed the trial judge upon the question of mesne profits and disallowed the same, a right of appeal lay to the ninth circuit court of appeals and "hope springs eternal," etc. It is significant that the Waialua Agricultural Company, pending appeal to the circuit court of appeals of the ninth circuit from the decree entered pursuant to the opinion of May 3, 1934, made an offer of compromise of $240,000 and von Holt, the guardian of the incompetent, and Mr. Hite, of all living persons the best qualified to estimate the value of the ultimate recovery of the ward in the Waialua case, rejected the offer. This evidence tended to show what, in the opinion of persons intimately associated with the case and in a position to judge, was the reasonable value of the claim of the ward. And, while not of great weight, it is sufficient upon which to base a finding that upon the date of the foreclosure of the mortgage this book account was reasonably worth its face value. The costs and expenses of the litigation were a first charge upon any amount that might be recovered by the ward and there was at that time no reason to believe that the ward would not ultimately recover by way of compromise or otherwise at least the amount of all reasonable and necessary costs and expenses advanced by her attorney in her behalf. The only other property of the firm of which we have been advised is office furniture. No evidence, however, of the items or the value thereof

as of the date of foreclosure was adduced and in the absence thereof no value will be attributed thereto.

Next as to firm liabilities. The mortgagor did not assign his undivided one-half interest in any particular account or any particular outstanding fee of the firm *eo nomine*. His mortgage was of his one-half interest in the firm's business and fees and hence there must be taken into consideration the debts of the firm to which this business and fees were subject. To determine the net reasonable value of the mortgagor's undivided one-half interest in the net assignable assets of the firm, including outstanding fees earned up to the day of the date of foreclosure, there must also be considered the amount of the outstanding debts of the firm. The evidence upon this subject is not entirely satisfactory but sufficient appears upon which to conclude that the aggregate reasonable value of fees earned and of the book account against the ward for cash advanced on her behalf for costs and expenses in the Waialua litigation greatly exceeded the debts of the firm then due.

The aggregate amount of the liabilities of the firm is in dispute. The appellant computes them at $18,169.91; the appellee at $20,242.30. We have concluded that they aggregated $16,342.48.

The liabilities of the firm as of the day of the date of foreclosure may be segregated into four groups: 1. notes and accounts payable re Waialua case, $9971.18; 2. accounts payable re Waialua case, $4622.80; 3. accounts payable re clients generally, $748.50; and 4. reimbursement of client of fee received, $1000. The first group represents money borrowed by the firm to secure the necessary cash for costs and disbursements required in the Waialua case. There is no dispute between the parties as to the items involved except as to the extent of the liability of the firm upon its note to the Union Mortgage

Company. Appellee claims that the amount of the indebtedness outstanding on this note was $5300. It appears, however, that $2300 of the indebtedness in July, 1932, was merged into a personal note of Ulrich and Mr. and Mrs. Hite. The items of the second group are transcripts of the evidence, printing of briefs and witness fees in the Waialua case. Appellee admits that they were contingent upon recovery. The third group represents debts incurred by the firm for clients generally. In the absence of evidence to the contrary it is reasonable to assume that the disbursements were reasonable and were collectible from the clients for whose account the same were incurred. The fee referred to in the fourth group is admittedly repayable to the client. The creditors in group one, with the exception of the Union Mortgage Company, were the guardian of the ward, Eliza R. P. Christian, and a relative of Mr. Hite. It was tacitly understood that repayment to the latter await the conclusion of the Waialua case.

The contention of the appellee that the liabilities of the firm included advances made by Charles M. Hite on account of the Waialua case subsequent to foreclosure cannot be sustained. As heretofore pointed out, the obligation to advance costs in the Waialua case was personal to Ulrich & Hite and could not be transferred to another without the consent of the client. No claim has been made that after the foreclosure Ulrich & Hite were relieved by Mr. von Holt of their obligation to advance all necessary and reasonable costs in the Waialua case. Hence the costs and expenses of litigation advanced by Mr. Hite subsequent to foreclosure cannot be considered in determining the liabilities of the firm upon the date of foreclosure. They may or may not become material upon a partnership accounting as between Hite and the plaintiff's testate but refusing, as we do, to order such account-

ing, we refrain from expressing any opinion upon the subject.

Interest upon the items going to make up gross assets and liabilities has not been considered. It does not appear that interest was payable except upon the debts included in groups one and four and if computed would be offset by the interest payable upon the items of the open account of the copartnership against the ward. From the foregoing it appears that the net assets of the copartnership of Ulrich & Hite as of the day of the date of foreclosure exceeded the liabilities of the copartnership by $4116.10 and that an undivided one-half interest therein, of the fair and reasonable value of at least $2000, was purchased upon foreclosure sale for the sum of $350. In our opinion the consideration paid for Mr. Ulrich's undivided one-half interest of the net assets of Ulrich & Hite was inadequate and disproportionate to the value of the interest sold.

There remains to be considered the relations of the mortgagor, mortgagee and Mr. Hite at the time of foreclosure and the determination of the effect of those relations upon the burden of proof.

The mortgagee, while nominally the Security Investment Company, Limited, was in reality Charles M. Hite. The Security Investment Company, Limited, was admittedly organized by Mr. Hite for the transaction of his private nonprofessional business; it did no business except that which was transacted under its name by Hite and during the existence of the copartnership other than that transacted under the name of Hite or Ulrich & Hite. It had no place of business other than the office of Mr. Hite except when he was associated with Mr. Ulrich and during that time its place of business was the office of Ulrich & Hite. With the exception of qualifying shares issued to the other officers of the corporation, all of the capital stock of the Security Investment Company issued and

outstanding was owned by Hite. None of the business of the company was transacted by any officer of the company other than Hite and it had no clerks or employees. Hite himself personally executed all of the business of the company. The board of directors, if any, of the Security Investment Company, Limited, did not function. The money representing the loan made to Ulrich for which the note and mortgage were given as security was furnished by Hite from funds of which he had the exclusive dominion and control. The note and mortgage evidencing the indebtedness and lien were prepared by Hite. The mortgage was recorded by Hite. Where, as here, the fairness and good faith of those conducting a foreclosure sale are subject to review, the cloak of corporate entity will not be permitted to obscure the facts. Ulrich's creditor was not the Security Investment Company, Limited, but his law partner Hite, and while the note and mortgage were nominally in the name of the Security Investment Company, Limited, as payee and mortgagee, respectively, the real party in interest was Hite. Demand for payment, the preparation of the notice of intention to foreclose, the selection of the newspaper in which the notice of intention was advertised, the advertisement itself, the conduct of the foreclosure sale and the resulting conveyances of the property sold upon foreclosure were all handled by Hite. In the light of all of the facts, the acts performed in the name of the Security Investment Company, Limited, must be regarded as the acts of Mr. Hite.

Under the circumstances, the citation previously made from 11 C. J., tit. Chattel Mortgages § 517, p. 712, applies. The burden was upon the defendant Hite as the real mortgagee to show that the sale was regularly and fairly conducted in every particular and that an adequate price was paid for the property sold. This he failed to do.

The lower court erred in holding that this suit is

barred on the ground of laches. It is unquestionably the rule that the mortgagor must act with reasonable promptness in a proceeding undertaken by him to set aside the foreclosure sale made under power of sale. Equity will not grant relief to a litigant who has negligently slept on his rights and permitted his demand to become stale where injustice would be done by granting the relief asked. The defense of laches, however, may not be invoked to defeat justice and would apply only where the enforcement of the right asserted would work injustice. Whether or not a plaintiff is barred by laches depends upon the nature of the right asserted, the character of the relief sought and the nature of the proceedings resorted to. Obviously each case depends upon its own particular circumstances.

In the instant case there is no showing that the mortgagor actually knew of the foreclosure until after the foreclosure sale. And notice thereof was coupled with assurances by Mr. Hite, in which the Security Investment Company, Limited, and Mr. von Holt joined, to the effect that the foreclosure sale had not changed the pre-existing conditions as fixed by the amended contract of employment. Mr. Hite, in his letter to Mr. Ulrich of October 18, 1934, after assuring him that the purpose of the letter was to incorporate the assurances which he had previously made orally, expressly stated that if he (Ulrich) should continue to abide by his agreement with his partner and Mr. von Holt, as he had done in the previous week, he would suffer no loss whatever by reason of the foreclosure of the mortgage and that Mr. Hite would handle the fee upon the determination of the litigation substantially as per the existing contract of employment. The "agreement" to which Mr. Hite referred was in connection with the time to be devoted by Mr. Ulrich to the Waialua case and the "work" to which Mr. Hite referred as having been done by Mr. Ulrich in the past week had reference

to work done by Mr. Ulrich in the preceding week on the Waialua case. Mr. Hite in his letter appended the condition, however, "It must be understood between us, however, that this assurance is based upon a continuance on your part of the interest and energy shown by you during the past week, and that should any future serious neglect of the cause on your part occur, such as has been complained of in the past, my assurances will be withdrawn." This sentiment as expressed by Mr. Hite in his letter of October 18 was reiterated from time to time and it was not until December 6, of the following year, that Mr. Ulrich had any reason to believe that there was any necessity of taking any proceeding to set aside the foreclosure sale. The assurances contained in Mr. Hite's letter of October 18, 1934, and his subsequent communications to Mr. Ulrich prior to December 6, 1935, were well-calculated to lull Mr. Ulrich into security as to his interest in the Waialua fee, the item which apparently loomed most largely in the minds of the parties. It does not appear that in the meantime Ulrich unequivocally accepted the conditions imposed by Mr. Hite. On December 6, 1935, Mr. Hite wrote Mr. Ulrich "that the contract heretofore existing between the undersigned and you with reference to your participation in the Waialua litigation, as evidenced by letter dated October 18, 1934, must be regarded by us as having been abrogated by your persistent breach of your undertakings." The undertakings referred to were undertakings by Mr. Ulrich of work on the Waialua case at certain times in the personal offices of Mr. Hite, and in conclusion stated: "Notwithstanding what is undoubtedly a wilful and deliberate evasion of your repeated promises, I take this opportunity of assuring you again that I have no intention now or hereafter of personally making one penny at your cost out of your derelictions. Without prejudice to any claim that you are

entitled to no part of such fee as may be paid eventually, I state to you now that, providing you cooperate upon such small matters as I may from time to time ask of you, and extend help without further hindrance, you shall receive when this matter is ended exactly the same treatment that I expressed in our letter of October 18, 1934, save only that such expenses as we may be obliged to now pay and incur due to your breach of our contract, including the employment of other counsel, will of course be a charge against you." This letter was joined in by the Security Investment Company. On the same day Mr. von Holt, as guardian of the incompetent, wrote Mr. Ulrich that he was "in entire accord with the terms of that letter [the letter from Hite to Ulrich dated December 6, 1935], and agree that in the event of the successful termination of the suit, I will see to it you shall have the portion of it therein prescribed; but only upon the conditions therein prescribed and upon the specific understanding that you shall file in court your withdrawal as counsel in these proceedings immediately. In the event of your failure to file such withdrawal within one week after the delivery of this letter, I shall, as guardian of Eliza R. P. Christian and in her name, take such steps as may be necessary to secure your removal as counsel of record, and shall contest the payment of any fee whatever at any time to you."

In the meantime, in October, 1935, a firm of mainland attorneys had been employed by Mr. Hite as associate counsel in the Waialua case and the contract between Mr. Hite and the mainland attorneys was approved by the guardian on December 14, 1935.

Thus it will be seen that it was not until December of the year following the foreclosure that Ulrich had any reason to believe that the foreclosure of the mortgage had in any way affected his interest in the Waialua case. In June, 1936, due to a malady from which he had suf-

fered for many years, Mr. Ulrich, on the advice of local physicians, departed to the mainland for medical advice. Physicians on the mainland advised him that a capital operation was necessary and it was done but it proved unavailing and Mr. Ulrich died in the following August. It can be said without fear of contradiction that from June, 1936, until the time of his death, Ulrich, by reason of illness, was incapable of attending to his personal business affairs.

Under the circumstances it cannot be said that Mr. Ulrich slept on his rights. On the contrary he believed that his rights in the Waialua fee remained unaffected and undisturbed by the foreclosure proceedings. There was no occasion for his taking any proceedings to set those proceedings aside until December, 1935. He was then, however, in a precarious physical condition; he required medical attention; he sought for possible relief abroad and necessarily was compelled to put his personal affairs aside for the time being. Unfortunately, the efforts made on his behalf proved unavailing and the controversy involved in his relations with Mr. Hite was left for his widow and creditors to settle.

To deny to plaintiff the prosecution of the rights asserted in this case would be a gross miscarriage of justice. No change in conditions has occurred to the prejudice of the respondent Hite. Fees of the firm collected by him subsequent to foreclosure have been retained by him and with the death of Mr. Ulrich and the realization by Mr. Hite of the proceeds of an insurance policy that Mr. Ulrich in his lifetime had assigned to Mr. Hite as collateral security for the mortgage indebtedness and other personal debts owing, Mr. Hite has reimbursed himself in the amount of the loan with interest, together with costs and expenses of the foreclosure.

Holding, as we do, that the foreclosure sale must be

vacated and set aside, it becomes necessary to determine the extent of any additional relief to which plaintiff is entitled. In our opinion a resale is not necessary, it affirmatively appearing herein that the full amount of the indebtedness secured by the mortgage, together with interest and costs of foreclosure, including attorneys' fees, has, since foreclosure, been paid to the mortgagee. Therefore, specification of error number seven must be sustained and the mortgage cancelled and the Security Investment Company, Limited, is hereby commanded and directed to cancel said mortgage of record. This eliminates from consideration specification of error number eleven involving "payment" and specification of error number thirteen involving "waiver and estoppel."

We deem it unnecessary to marshal the evidence upon which we predicate the conclusion that the mortgage indebtedness, assuming it to have been $1500, has been paid, together with interest and costs of foreclosure. Moreover, to do so would unnecessarily prolong this opinion. But, before dismissing the subject from consideration, we desire to correct any misimpression that has arisen as to the amount to which Mr. Hite was entitled to be credited by the applications made by him upon the mortgage indebtedness. It is true that Mr. Ulrich borrowed $1500 from Mr. Hite, but Mr. Hite was only entitled to recover from Mr. Ulrich on account of this indebtedness the principal sum of $750. The $1500 was borrowed by Mr. Ulrich to repay a retainer in that amount paid to Ulrich & Hite by a client of the firm. After the payment of this retainer, it developed that another firm with which Mr. Ulrich had been associated prior to the formation of his partnership with Mr. Hite had represented adverse interests in the same subject matter in which the retainer of $1500 had been paid to Ulrich & Hite. The facts are conceded by Mr. Hite. Mr. Hite, however, objected to the

reimbursement of the client in the amount of the retainer paid and the matter having in the meantime been called to the attention of the grievance committee of the Hawaii bar association, together with other facts involving not alone the acceptance of employment in which the attorney retained was disqualified but also other charges, Mr. Hite advised fighting the charges. Mr. Ulrich preferred to make immediate restitution and did so, borrowing the $1500 necessary from Mr. Hite under the circumstances heretofore stated. Conceding as he does that his partner, Mr. Ulrich, was disqualified from accepting employment, Mr. Hite equally with Mr. Ulrich was obligated to reimburse the client in the amount of the retainer paid. The claim of the client for reimbursement was against the partners jointly and there was no consideration for the assumption by Ulrich of the repayment of the entire amount. Ulrich was entitled to reimbursement from his partner Mr. Hite to the extent of one-half of the amount repaid to the client. And it made no difference that the question of disqualification had been aggravated by additional further charges against Mr. Ulrich or that the matter was pending before the grievance committee. The admission that the firm of Ulrich & Hite was disqualified from accepting the employment disposes of the question.

Specification of error number twelve is frivolous and will not be considered.

In conclusion, the court refuses to consider the legal effect of the discharge of Mr. Ulrich as one of the attorneys for plaintiff in the Waialua case, the subject of specification of error number six, or to determine how the Waialua contingent fee should be divided, the subject of specification of error number fifteen, upon the ground that these issues are not involved in this suit and may only be inquired into upon an appropriate proceeding brought for that purpose. For the same reason a general accounting

as between Mr. Hite and plaintiff's testate, the subject of specification of error number sixteen, will not be ordered.

Appellees complain that the trial court erred in denying their motion for a decree upon the pleadings upon the ground that the plaintiff had failed to file a replication. The error, if error was committed by the trial judge in denying the motion and holding in effect that under the pleadings a replication was unnecessary, is one of which the appellees cannot complain. Cross-assignments of error do not lie at the instance of an appellee who is not a cross-appellant. (3 C. J., tit. Appeal & Error, § 1567, p. 1403.)

The decree appealed from is therefore reversed and a decree of this court consistent with the views herein expressed will be entered upon presentation.

*P. Silver* (*Cass & Silver* on the briefs) for appellant.

*M. K. Ashford* (*W. H. Heen* with her on the briefs) for appellees.