UNIVERSAL C. I. T. CREDIT CORPORA-
TION, a Corporation (Plaintiff),
Respondent,

v.

Earl BYERS (Defendant), Appellant.

No. 29571.

St. Louis Court of Appeals.

Missouri.

Feb. 28, 1957.

Thurman, Nixon & Blackwell, Jeremiah Nixon, Hillsboro, for appellant.

Ennis & Pannell, William L. Pannell, Festus, for respondent.

HOUSER, Commissioner.

This is a suit for a deficiency judgment arising out of the foreclosure of a chattel mortgage. The trial court directed a verdict for plaintiff, the assignee of the mortgage, for $259.62 plus interest and attorneys' fees in the total sum of $318.06. Defendant, the mortgagor, appeals from the ensuing judgment.

The petition alleged that on July 25, 1953 defendant executed a purchase money chattel mortgage for $1,069.12 payable to Bender-Schulz Motors, Inc. in 18 consecutive monthly installments of $59.39 beginning on September 5, 1953; that the mortgage, given on a 1950 model Mercury automobile, was assigned for value to plaintiff on the date of its execution; that defendant defaulted, whereupon the automobile was repossessed and sold under the mortgage to Batson Motor Company of St. Louis for $225; that at the time of the repossession there was a balance due of $475.12; that repossession expenses amounted to a total of $9.50, leaving an unpaid balance of $259.62, for which plaintiff prayed judgment together with interest, attorneys' fees and costs. The mortgagor filed an answer consisting of a general denial and a counterclaim conceding the purchase of the automobile, the execution of the mortgage, the balance due thereon at the time of the repossession and that plaintiff sold the automobile for $225 and alleging that plaintiff was "careless and negligent in the manner and method" in which he car was sold; that at the time of sale the automobile was reasonably worth $725; that plaintiff, knowing

that the value of the automobile was much greater than $225 and without regard for its duty to use due care and good faith in the sale so as to obtain the best price readily obtainable, carelessly and negligently sold the car for $225 thereby damaging defendant in the sum of $500, for which defendant prayed judgment.

Default was made by defendant after 10 payments had been credited to his account. Thereafter three notices were sent by plaintiff to defendant in August, 1954. On September 10, 1954 plaintiff took the automobile into its possession under the provision of the mortgage that upon default the full balance becomes due forthwith and the holder is entitled to take possession of the automobile without notice or demand and that "The car may be sold with or without notice, at private or public sale * * * with or without having the car at the sale; the proceeds less all expenses shall be credited on the amount payable hereunder; Customer shall pay any remaining balance forthwith as liquidated damages for the breach of this mortgage * * *." Upon repossession plaintiff expended $6.50 for polishing the car and $2 for gasoline to put it in operating condition and $1 "to get a repossessed title from the State Department of Registration." The car was then placed on plaintiff's lot in the City of St. Louis on September 10, 1954 and offered for sale. This is a public lot where anyone can come in and buy an automobile. Bidders come to that lot every day from Texas, Arkansas "and every place" for the purchase of automobiles. The automobile in question remained on the lot two weeks and then was sold at private sale to Batson Motor Company of the City of St. Louis for the sum of $225, without advertising the automobile to the public or giving notice of the sale to defendant. The sale was the result of private negotiation between plaintiff and the buyer's representative. There was no connection between plaintiff and Batson Motor Company. Plaintiff's outlet manager in charge of the sale testified that while he could not remember definitely he was "sure there were other offers" because they "have a lot of dealers coming in every day" and "there were possibly several dealers looked at it;" that they try to get as much for a car as they can; that "we start out high, try to get it, and if we can't get it we keep dropping the price until we do sell it;" that $225 was the best offer he received.

The only conflict in the evidence related to the condition of the automobile. Plaintiff's testimony indicated that the automobile was in bad condition when repossessed. Defendant's testimony tended to show that it was in very good condition.

Defendant testified that just before the car was repossessed he received an offer of $525 for it and that in his opinion the value of the automobile at the time of repossession was approximately $650. He produced other expert testimony indicating that the automobile was worth from $600 to $700. Plaintiff offered no testimony on value.

On this appeal defendant contends that the court erred in directing a verdict for plaintiff on its petition and for plaintiff on defendant's counterclaim; that defendant made a submissible case on his counterclaim but that plaintiff did not make a submissible case on its petition; that in any event the question whether plaintiff exercised due diligence to get the best obtainable price for the automobile should have been submitted to the jury.

The assignee of a mortgage conducting a private sale of mortgaged property under a power contained in a mortgage acts in the capacity of a trustee for the mortgagor. He is obliged to act in good faith, conduct the sale fairly and justly and exercise reasonable care and diligence to make the property bring the best price obtainable. He is held to a strict account for the manner in which he discharges his duty as trustee and is to be held liable to the mortgagor for any sacrifice resulting from a failure properly to perform his duty. Universal Credit Co. v. Uhri, Mo.App., 101 S.W.2d 501; Waltner v. Smith, Mo.App., 274 S.W.

526; Nichols & Shepard Co. v. Stokes, Mo. App., 196 S.W. 1075; First National Bank v. Wright, 104 Mo.App. 242, 78 S.W. 686; 14 C.J.S., Chattel Mortgages, § 373, p. 1029; 10 Am.Jur., Chattel Mortgages, §§ 257, 259. The burden of proof in this case is upon the mortgagor to show that the mortgagee or his assignee failed to act in good faith and did not use every reasonable means to obtain the full value of the mortgaged property. Arthur R. Lindburg, Inc., v. Quinn, Mo.App., 123 S.W.2d 215; Waltner v. Smith, supra.

■ Defendant-mortgagor failed to sustain the burden of proof. No evidence was introduced from which a jury could have found that plaintiff breached its duty in the above respects. There was no evidence that plaintiff did not give prospective purchasers a reasonable opportunity to offer bids, or that its representatives discouraged open, free and competitive bidding, or did not sell the property to the highest bidder, or, as in Universal Credit Co. v. Uhri, supra, that it went through the form of a sale which in fact was nothing but a book transaction. There was no evidence of fraud or unfair dealing, deceit or any unfair advantage taken or practiced on defendant.

Defendant's principal complaint with respect to the manner in which plaintiff conducted the sale is that the price obtained was less than the market value of the automobile in its good condition as testified to by defendant. The fact that the property sold for only one-third of its market value, which we accept as true in testing the propriety of the action of the trial court, does not prove that plaintiff did not act in good faith or exercise reasonable diligence to obtain the best price obtainable. Arthur R. Lindburg, Inc., v. Quinn, supra; Waltner v. Smith, supra. In the last cited case the Kansas City Court of Appeals said, 274 S.W. loc. cit. 527:

"Defendant's daughter testified that, at the date the car was taken by plaintiff under the mortgage, it was in perfect condition and worth more than the $200 for which it was sold. But this may not be accepted as proof of lack of good faith and use of reasonable means by plaintiff to obtain at the sale the full value of the car. Defendant introduced no other evidence which might be accepted, even inferentially, as proof on this point. Defendant therefore having failed to meet her burden of proof on this point, the court properly directed a verdict for plaintiff."

■ Mere inadequacy of price is insufficient to impeach a sale of property under the power contained in a chattel mortgage, 14 C.J.S., Chattel Mortgages, § 381, p. 1034, unless it is so gross as to shock the moral sense or raise the inference of fraud or imposition, or unless it is accompanied by fraud or unfair dealing. Kingman v. Hill, 71 Mo.App. 666. In Yellow Mfg. Acceptance Corporation v. American Taxicabs, 344 Mo. 1200, 130 S.W.2d 601, it was held that a foreclosure sale of automobiles at 40% of their reasonable value was an insufficient allegation of inadequate price to state a case for setting aside the sale on the sole ground of inadequacy of price. In Oakey v. Bond, Mo.Sup., 286 S.W. 27, 28, a trustee's sale of real estate which brought a little more than one-third of its alleged value was regarded as an inadequacy which was "not so gross as to shock the moral sense and justify setting the sale aside solely on that ground." In Harlin v. Nation, 126 Mo. 97, 27 S.W. 330, the Supreme Court said, 27 S.W. loc. cit. 331:

" * * * While this property sold for only $100, when it was worth $500 cash, still we cannot say the price was so grossly inadequate as to raise the inference of fraud."

In Roby v. Smith, 261 Mo. 192, 168 S.W. 965, the Supreme Court said, 168 S.W. loc. cit. 967:

"It is to be regretted that the property in controversy brought at most not more than one-fourth of its value at the trustee's sale, but such things frequent-

ly happen, and will continue to happen as long as people incumber property * * *."

On cross-examination plaintiff's outlet manager revealed that there is an auction in St. Louis where automobiles are bought and sold and that the "best way to keep up with the automobile market is to follow the auctions and auction sheets," but that plaintiff did not put the Mercury up for sale at the automobile auction. Defendant contends that plaintiff's failure to do so discloses lack of diligence. The evidence further disclosed that the automobile auction is not public but is open only to dealer members in good standing, and that plaintiff could "do better" by selling cars on its own lot than by taking them to the auction. Defendant offered no evidence showing what 1950 Mercurys were bringing at the auction at the time or that a better price might have been obtained at the auction, which was limited to dealers, than on plaintiff's lot, to which not only dealers, but the general public, had access. It would be speculative to say that a better price could have been obtained at the auction and we conclude that the failure to auction the Mercury, under the testimony in this case, was not substantial evidence from which a jury could have found lack of good faith or lack of reasonable diligence on plaintiff's part.

Neither inadequacy of price, Kingman v. Hill, supra, nor failure to use the automobile auction, upon this record, constitutes a defense to this action or a claim upon which relief could be granted by way of counterclaim. There was no fact issue for the jury on the counterclaim and the court did not err in directing a verdict against defendant thereon.

Nor was there any error in directing a verdict for plaintiff on its petition. The execution of the mortgage, the default in payments, the balance due at the time of repossession, the repossession and sale and the sale price were admitted by defendant in his counterclaim in words and figures the same as alleged in the petition.

Accordingly, the Commissioner recommends that the judgment of the circuit court be affirmed.

PER CURIAM.

The foregoing opinion of HOUSER, C., is adopted as the opinion of the court.

The judgment of the circuit court is, accordingly, affirmed.

ANDERSON, P. J., and MATTHES, J., and JAMES D. CLEMENS, Special Judge, concur.